MASTEN BROWN v. THE STATE.

No. 12141.   Delivered January 16, 1929.
Rehearing denied March 6, 1929.

The opinion states the case.

*Oscar H. Calvert* and *P. H. Kveton,* of Dallas for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is rape; punishment fixed at confinement in the penitentiary for a period of five years.

The evidence shows that Juanita Simpson, a negro girl about eight years of age, was a member of the household of Masten Brown, the appellant; that the appellant's wife was an aunt of the little girl and she was permitted by her mother to stay at the appellant's home for about two weeks. While the appellant's wife had gone to church, the little girl was left in his custody. She testified in detail to facts showing that he was guilty of rape. She claimed that he persuaded her to prepare herself for and to submit to the acts upon the promise of some ice cream and chocolate candy, and that he threatened to whip her if she revealed the occurrence. She testified that she bled from her privates as a result of the acts of intercourse. The little girl's mother testified that since her return from the appellant's home for some cause "bloody corruption" came from her privates; that she had not previously been in that condition.

The appellant testified and denied any abuse of the child. He claimed that he and his wife had quarreled and that the prosecution was instigated by his wife because of her enmity.

The testimony of the two doctors who were introduced was to the effect that the examinations made by them led to the conclusion that

there was not a complete penetration of the vagina of the prosecutrix, but that her private parts were bruised; that the lips of the vagina had been opened and entered and that inside of the lips there were abrasions which might have been produced by the alleged assault.

Penetration is a necessary element of the offense of rape. Art. 1187, P. C., 1925. The law does not require, however, that the penetration go to the extent of rupturing the hymen. It is enough that the proof shows that there was penetration between the labia of the female private parts. Watkins v. State, 78 Tex. Crim. Rep. 65; Mirick v. State, 83 Tex. Crim. Rep. 388.

Several bills of exceptions are found in the record. The first bill complains of a leading question propounded by State's counsel to the witness Juanita Simpson. The question simply has to do with whether she was the wife of the appellant and whether there was any difference in her condition before and after the alleged assault of which she testified. The witness was only eight years of age, and it was within the discretion of the court to permit a leading question. The bill fails to show that there were not conditions making leading questions appropriate. Moreover, the bill fails to show that there was an answer to the question.

Bill No. 2 relates to an inquiry of the mother of the prosecutrix as to whether she had had occasion to examine her daughter, to which she answered in the affirmative, when State's counsel further asked: "What did you find?" The bill is silent touching the reply.

Bill No. 3 complains of the fact that there was proof of rape of the prosecutrix upon more than one occasion. The bill is too meagre to demonstrate the accuracy of the claim. However, the court in qualifying the bill states that the testimony of which complaint is made was brought out by the accused and that there was an absence of a request to withdraw it from the jury. The youth of the prosecutrix precluded the necessity of proving resistance upon her part or force more than would necessarily be involved in the act of penetration. See Rodgers v. State, 30 Tex. Crim. App. 510; Alexander v. State, 58 Tex. Crim. Rep. 621; Edwards v. State, 78 Tex. Crim. Rep. 210.

Bill No. 5 is composed to a great extent of questions and answers which do not appear to have been authorized by any order of the trial court. The bill pertains, it seems, to the exhibition to the jury at some stage of the trial of some of the underclothes of the prosecutrix which were dirty and bloody. It is very difficult to determine from that part of the bill which is not in question and

answer form whether the clothes were introduced in evidence or were relevant to any issue in the case. However, as the bill is qualified it appears that the jury was instructed that they would consider the apparel for no purpose whatever and this, in view of the fact that the penalty assessed was the lowest allowed by law would, we think, be a sufficient answer to the contention that the bill reveals reversible error.

Bills Nos. 6 and 7 relate to the same subject matter and have the same qualification as Bill No. 5, except that in one of them there is a request that the defendant be discharged because of the exhibition of the dirty clothes and the bloody apparel.

Bill No. 8 is a complaint of the refusal of the court to instruct the jury to acquit the appellant on account of the alleged insufficient evidence.

The third subdivision of the motion for new trial contains an averment upon which the appellant relied for a new trial upon the ground of newly discovered evidence. These facts are in substance as follows: That the appellant was ignorant, was confined in jail from the time of his arrest, and was unable to employ counsel and was without opportunity to discover the alleged new testimony upon which he relied; that counsel were appointed to represent the appellant and the case was immediately called for trial and for that reason counsel had no opportunity to ascertain the existence of new evidence or to prepare for trial.

Touching the predicate or excuse for the want of diligence, the position before this court would have been much more plausible if some motion or request had been made at the beginning of the trial or before it began, after the appointment of counsel, seeking a delay such as would enable them to acquaint themselves with the facts and to prepare the case for trial. Had such request been made, it is likely that the action of the trial court upon it would have been favorable to the accused, and moreover, if there had been a denial of the request and bills of exceptions showing the necessity for a delay, this court would be in a much better position to review the question. As it is presented here, without objection or a request for a delay, the appellant went into the trial, and after the verdict against him, ascertained the existence of evidence which he claims is newly discovered and material to his defense.

Looking to the affidavit attached to the motion, the evidence of Martha Chatman is to the effect that at the home of Viola Simpson, the mother of the prosecutrix, Juanita Simpson, before the trial, the affiant heard the prosecutrix, in answer to a question as to

whether she had been raped by the appellant, say: "If I didn't say that Uncle Brown did that to me I would go to jail, etc."; that Juanita Simpson further said that her aunt (the appellant's wife) kept her up at night telling her what to say upon the trial. The affidavit shows that at the time of the alleged conversation, Viola Simpson was present. She was a witness and testified at the trial. Appellant and his counsel then had an opportunity to inform themselves of any facts within her knowledge. The facts set forth are but impeaching and even as such, they are not specifically in conflict with the testimony of Juanita Simpson given upon the trial. The new evidence was, moreover, but cumulative of that which could have been obtained from the witness Viola Simpson. The ruling of the court is supported by numerous decisions. Among them are McVerse v. State, 103 Tex. Crim. Rep. 140; Beasley v. State, 97 Tex. Crim. Rep. 36; Cooper v. State, 103 Tex. Crim. Rep. 226; Lewis v. State, 82 Tex. Crim. Rep. 285; Vernon's Ann. Tex. C. C. P., 1925, Vol. 3, p. 29, note 32, and p. 31, note 33, and cases collated; also Crouchette v. State, 99 Tex. Crim. Rep. 572.

In the affidavit of Jessie May Alexander it was stated that some child's bloomers and other dirty clothes were taken to the examining trial and shown there by the appellant's wife and that she took them away therefrom. The affiant afterwards washed some clothes for Juanita Simpson and found those bloomers so dirty and filthy that she burned them up; that she believed the clothes which she burned were the same that Juanita Simpson was supposed to have had on at the time of the alleged rape. The affiant further stated that she had seen the clothes that were introduced at the trial of the appellant and that in her opinion these were not the same clothes that were taken to the examining trial. Some bloomers were present at the trial and identified by the appellant as belonging to Juanita Simpson. They were also identified by her as the bloomers which she wore at the time the offense was committed. The court withdrew all reference to the bloomers in the evidence from the consideration of the jury and instructed them to disregard the bloomers and all inquiries and testimony concerning them. If the bloomers had been left in evidence a part of the testimony set out in the affidavit might have been admissible as a circumstance against the identity of the apparel. That part of the affidavit, however, which states the opinion of the affiant would not be admissible. The testimony touching the apparel having been excluded, none of the matters set up in the affidavit would have been relevant.

Another affiant, Rosetta Rutherford, claims to have heard the appellant's wife say in the presence of Juanita Simpson that if Brown (the appellant) left her, she would have him put in jail, and that Juanita Simpson said: "Auntie Brown, Uncle Brown didn't do nothing to me and didn't bother me." This was in the nature of impeaching testimony which ordinarily will not require a new trial though proper diligence is shown, to class the testimony as newly discovered. Alexander v. State, 84 Tex. Crim. Rep. 185; Washington v. State, 86 Tex. Crim. Rep. 652; and other cases cited in Vernon's Ann. Tex. C. C. P., Vol. 3, p. 30, note 33.

Another affiant, Jim Rutherford, made an affidavit to the effect that Juanita Simpson and the affiant's children went to school together; that he often saw Juanita Simpson and saw her about the time of the alleged occurrence, and that she was playful; that he observed nothing the matter with her; also that about the time of the alleged occurrence he heard Brown and his wife quarreling and heard her threaten to put him in jail if he left her. To the same effect in substance was the affidavit of Josephine Bell; also that of Edna Bell. The appellant's wife was not used as a witness, and her declaration set forth in the affidavit would not be admissible. It was hearsay and incompetent. The other purported testimony is not of importance.

The trial took place on April 24th, and the affidavits mentioned were obtained, several of them on the 3rd of May, one on the 4th, and one on the 7th of that month. They all appear to have been made by persons who were intimates of the family of the prosecutrix and of the appellant, and the alleged facts which they disclosed could manifestly have been ascertained by any character of diligence antecedent to the trial and doubtless could have been obtained before the trial by a postponement. This is clearly a want of diligence which the law demands in discovering evidence upon which reliance is had for a new trial. The demand for diligence as a predicate for a new trial by reason of newly discovered evidence is statutory and emphasized by many precedents. Art. 753, Vernon's Ann. Tex. C. C. P., Vol. 3, and cases collated at page 17, note 28.

On the facts before him the discretion of the judge presiding at the trial to refuse to order a new trial is manifest. Unless his discretion is abused this court is not authorized to revise the judgment. Ross v. State, 98 Tex. Crim. Rep. 567; Latson v. State, 95 Tex. Crim. Rep. 502; Vernon's Ann. Tex. C. C. P., Vol. 3, pp. 15–16, notes 26 and 27, and cases collated.

None of the matters presented for review are regarded as justifying a reversal of the judgment. An affirmance is therefore ordered.

*Affirmed.*

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant insists that we erred in our disposition of his bill of exceptions No. 5. From same we learn that while appellant was on the witness stand certain garments were brought before the jury by the State's attorney, to the exhibition of which before identification, appellant objected. State's counsel then asked appellant in reference to an under-suit. He denied any knowledge of same. He was then shown a towel which he said looked like one he owned. He was then shown a pair of bloomers and said they belonged to prosecutrix. He was then asked what was on the bloomers, and replied "Dirt." The State's attorney then said: "And that's blood, isn't it?" to which he answered "Yes, sir." At this point appellant made various objections, none of which seem verified further than as above appear, which were overruled. Nothing in the bill shows the connection of said clothes with the offense on trial, or that same were introduced in evidence, or otherwise used or referred to during said trial. For aught we know the bloomers may have served to solve some disputed issue. Trigg v. State, 99 Texas Crim. Rep. 384; Sec. 1855, Branch's Annotated P. C. The court qualifies the bill, as stated in the original opinion. Same is so vague and indefinite as that we are not able to agree with appellant's contention that it shows error.

Appellant insists that we erred in not sustaining his motion for new trial upon newly discovered evidence based upon affidavits thereto attached. In the original opinion we discussed these matters at some length,—our attention not being called to the fact that all of said affidavits were taken before appellant's counsel acting as notary public. Our attention now is called to this fact. Under all the rules such affidavits can not be considered. Miles v. State, 99 Texas Crim. Rep. 337. See authorities collated in Branch's Annotated P. C., Sec. 194.

Appellant also contends that we did not consider but one point raised in his bill of exceptions No. 8, which complained of the refusal of a special charge. Said charge asked for a peremptory instruction upon a number of grounds, one of them being that there was a fatal variance between the indictment and the proof. While this is stated as a fact in said special charge, our attention is not

called to any such variance. The special charge is further based upon the fact that the State failed to prove by evidence that defendant used force as alleged in the indictment. Such failure in a case where the female is alleged to be under the age of consent seems. held of no avail to the accused. Fields v. State, 39 Texas Crim. Rep. 488; Buchanan v. State, 41 Texas Crim. Rep. 128; Gray v. State, 43 Texas Crim. Rep. 380. Said instruction was further sought on the ground that the evidence failed to show the prosecutrix not to be the wife of appellant. The proof in this case showing the prose-cutrix to be of the tender age of eight years, no further testimony would be needed to establish the fact that she was not appellant's wife. Hardy v. State, 37 Texas Crim. Rep. 55; Munger v. State, 57 Texas Crim. Rep. 384. A further ground of a request for such instruction appears to be that the State failed to corroborate the testimony of the alleged injured female. Such corroboration seems held not necessary under the authorities cited in Sec. 1774, Branch's Annotated P. C.

Believing the case properly disposed of in the original opinion, the motion for rehearing will be overruled.

*Overruled.*