CHARLES WAIR V. THE STATE.

No. 18709. Delivered May 26, 1937.
State's Rehearing Denied June 23, 1937.

The opinion states the case.

*Shead & Smith* and *Harvey P. Shead,* all of Longview, and *Thomas B. Ridgell,* of Dallas, for appellant.

*Benjamin Woodall,* County Attorney, of Marshall, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for rape; penalty assessed at death.

Mrs. Tom Frazer, mother of the prosecutrix, testified that she, in company with her husband, drove to Tyler, Texas, about noon on the 13th day of February, 1936, and returned about 5:30 o'clock that afternoon. They left their thirten-year-old daughter alone in their apartment. Upon their return the witness found her daughter in a hysterical condition. She was crying and appeared to be very nervous. She complained of pain in her abdomen. The witness made an examination of the prosecutrix and found her underclothes to be bloody. She then took the prosecutrix to the bath room, gave her a douche and put her to bed. The prosecutrix was examined on the following morning by two physicians whose testimony will be adverted to later in this opinion.

Joy Frazer, the prosecutrix, testified that appellant came to the house where she was and asked for her father. Upon being advised that her father had gone to Tyler, the appellant grabbed the prosecutrix and kissed her. She fought him and slapped him in the face. He kept on kissing her. He picked her up, took her to the living room and tried to get her on the couch. She rolled off the couch and on to the floor. He then picked her up and took her to the bed room. From the testimony of the prosecutrix we quote:

"He took me back in the bed room and laid me on the bed

and got on top of me and put his hands on my body and put his hand on my privates and he did something that hurt me bad. When he first put his hand there it hurt a little but after he moved his hand and what he did then hurt badly. * * *

"While I was there on the bed and he was on top of me he penetrated my privates with something other than his hand. At the time he penetrated my private parts I suffered very much pain.

"In addition to penetrating my privates he every once in a while would kiss me. He was there at the house an hour or maybe longer. I started to crying and he seemed to get scared. He got up off of me and picked me up and took me back in the room and I was still crying. He kept saying, 'Hush crying, hush crying' or else he would slap my head off. * * * The first thing I did after he left, I got up out of the chair and walked to the screen door and hooked it. In a few minutes he came back and knocked and told me he wanted to tell me something and I screamed at him and told him to go away; and he came to the window and told me if I knew what was good for me I had better not tell my parents. He had been gone a few minutes (when) my sister came from school. He came back there after my sister came home from school and threatened us both. * * *

"I had on the same pants when my sister came home that evening. Mr. Wair tried to pull my pants off but I fought him and kept him from it. I had on the same pants when my mother got there. My mother took my pants. After he penetrated my person, * * * I suffered all day and then my mother came home and after she had been to me, it was still hurting."

On cross-examination the prosecutrix testified:

"I went before the grand jury and testified. I told the grand jury I couldn't tell what penetrated me, and that is right, and that I never did know whether Mr. Wair even had my pants unbuttoned. No, sir, I can't tell this jury whether he penetrated me with his privates.

"Q. You just don't know? A. I don't know what he did. I told Mr. Storey in the grand jury room, 'I couldn't tell what he did.' That is right, and that is what I want to tell this jury.

"Q. And at the time it hurt you the most you don't know where his hands were? A. When it hurt the most he had one hand over my mouth and one by my pillow. I don't know where he put that hand."

Appellant testified that he went to the Frazer home about

noon on the 13th of February for the purpose of seeing Mr. Frazer on business. He found the prosecutrix in the house alone. He had been drinking all day and had been drinking heavily for the past two years. He asked her to kiss him which she did. He then asked her the second time to kiss him, which she did. They went to the divan where appellant put his arm around her and kissed her some more. From the appellant's testimony we quote:

"I will tell the jury the whole truth, what happened before I got off the divan: I put my hand under her dress and put my finger in her privates. If I remember correctly, I put one finger in her privates. I did nothing more than put my finger in her privates. We remained on the divan 10 or 15 minutes. She did nothing when I put my fingers in her privates. She did not tell me not to do it. Then we went into the bed room. * * * I then put my hand under her dress. I began putting my fingers in her privates. I put two fingers in them. She began to cry and I believe she said, 'Oh, Mr. Wair, you are hurting me.' She was crying, and I said, 'Oh, the devil', and I got up and started out. * * *

"I never had any intention of having intercourse with that child. I never did pull my privates out. I never as much (as) unbuttoned my pants. I never penetrated her female organ with my privates or penis."

After leaving the home of the prosecutrix, the appellant went to a place called "Town Tavern" and drank some beer. He testified further:

"After I got outside and drinking beer and it cooled me off, I realized I had done the wrong thing. I thought I would try to see Mr. Frazer and make some kind of amends. I wanted to try to right the wrong I had done."

Dr. Van Sickle made an examination of the prosecutrix about nine o'clock on the morning after the alleged rape and found that the hymen had been completely destroyed. He noticed an irritation where the hymen was attached to the mucous membrane. He did not find any fresh blood upon the privates of the prosecutrix. The doctor expressed the opinion that something had penetrated the vagina of the prosecutrix. On cross-examination the doctor stated that the hymen of a female (a virgin) could be punctured with a finger or something of that kind. He also stated that the insertion of one or two fingers would cause a certain amount of irritation or inflammation.

Dr. Ross made an examination of the privates of the pros-

ecutrix with a speculum and found that the entrance into the vagina had been torn away with only fragments remaining. The prosecutrix was not bleeding but the torn edges were irritated. The doctor expressed the opinion that the hymen had recently been broken. He also stated that if the mother of the prosecutrix had administered a douche the day before his examination was made, she would have destroyed some of the vital evidence in making a medical examination. The doctor stated that the hymen could have been destroyed with a douche nozzle by force; also that the hymen could have been destroyed by the insertion of the finger. From his examination the doctor could not tell what had ruptured the hymen of the prosecutrix.

The rule is well settled that to support a conviction for rape there must be sufficient evidence to justify the finding that there was "carnal knowledge" of the female; that is, actual contact of the sexual organs and also penetration, however slight it may be. See Dodson v. State, 83 S. W. (2d) 992; Mullins v. State, 88 Texas Crim. Rep., 130. See also Tex. Jur., Vol. 35, p. 790, sec. 5.

The crucial question to be solved upon this appeal is whether the evidence as a whole warranted the jury in concluding that the vagina of the prosecutrix was penetrated by the male organ of the appellant. Her testimony is to the effect that her sister arrived soon after the alleged assault and that her mother arrived later. At the time that each of them arrived, the panties or undergarments of the prosecutrix, as the record is understood, were still on her person. The mother of the prosecutrix removed the panties which were bloody at the time she saw them.

Some of the testimony of the prosecutrix given before the grand jury, as quoted in this opinion, is specific to the point that she could not tell the grand jury what penetrated her. For example, she said:

"I never did know whether Mr. Wair even had my pants unbuttoned. * * * I can't tell this jury whether he penetrated me with his privates. * * * I don't know what he did. * * * I couldn't tell what he did. * * * When it hurt the most he had one hand over my mouth and one by my pillow. I don't know where he put that hand."

In his testimony the appellant specifically denied any penetration of the female organ of the prosecutrix. Doctor Van Sickle, who examined the prosecutrix on the morning after the alleged rape, found the hymen destroyed but found no fresh blood on her privates. He stated in substance that the action

of the mother of the prosecutrix in giving her a douche had practically rendered it impossible to determine the cause of the destruction of the hymen of the prosecutrix. Similar testimony was given by Doctor Ross who also examined the prosecutrix. Other parts of the testimony of the parties immediately in contact with the prosecutrix rendered uncertain by what means her hymen was destroyed. The appellant's testimony is to the effect that in his assault he used nothing but his fingers. There is an absence of testimony from any source that the appellant removed his trousers or unbuttoned them, or that he made any preparation in that respect toward performing the sexual act further than that which comes from the statement of the prosecutrix that he removed his coat, when they went into the bed room.

In view of the disposition made of the case we have pretermitted a discussion of the bills of exception found in the record as the matters presented are not likely to occur upon another trial.

Deeming the evidence insufficient to support the conviction, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

LATTIMORE, JUDGE (dissenting).—I shall not discuss this case in its revolting and disgusting details. My Brethren of this bench, for whose opinions I have the highest regard, think the case should be reversed because it was not fully developed as to what, if anything, penetrated the private parts of prosecutrix,—and that it was the person of this appellant. I have read and studied, as closely as I can, the testimony, and have been unable to bring myself into agreement on the point mentioned. I can not get away from the fact that this little girl had never been to school, had never been thrown promiscuously with other children; had doubtless never been talked to by any person in an effort to inform her, or suggest to her the verbiage of her testimony. She testified, among other things, as follows:

"He took me back in the bed room and laid me on the bed and got on top of me and put his hands on my body and put his hand on my privates and he did something that hurt me bad. When he first put his hand there it hurt a little but after he moved his hand and what he did then hurt badly."

She was asked if he penetrated her with something, and replied in the affirmative. She then said: "No, sir, I can't tell this jury whether he penetrated me with his privates.

"Q. You just don't know? A. I don't know what he did. I told Mr. Storey in the grand jury room I couldn't tell what he did. That is right, and that is what I want to tell this jury.

"Q. And at the time it hurt you the most you don't know where his hands were? A. When it hurt the most he had one hand over my mouth and one by my pillow."

The above was drawn out of the witness on cross-examination. The child was then re-examined by the State, and testified: "At the time this happened his body was on top of me. I was underneath him and lying on my back." Two doctors who examined the child the next morning said her hymen was completely gone, and there was irritation, and her vagina had been penetrated. In view of the fact that this child testified positively that at the time it hurt her most appellant had one hand over her mouth and one hand by her pillow,—it seems so plain that the jury had a perfect right, in the exercise of their intelligence and common knowledge, to know what this child did not know, and to say by their verdict that the thing used by appellant in penetrating her, at a time when his hands were otherwise occupied, as she says,—was the private part of this appellant. So believing I must announce my disagreement with the judgment of reversal, and respectfully enter this dissent.

### ON STATE'S MOTION FOR REHEARING.

KRUEGER, JUDGE.—After a careful review of the record in the light of the State's able motion for a rehearing we remain of the opinion that this case was properly disposed of by the opinion of the majority of this court. To again enter upon an extended discussion of the facts as the same appear in the record would not subserve any useful purpose.

We therefore overrule the State's motion for rehearing.

*Overruled.*