VICENTE LOZANO V. STATE.

No. 24467. January 25, 1950.

*Victor B. Rogers,* Fredericksburg, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

Appellant was convicted of the rape of his seven-year-old daughter, the punishment assessed being five years in the penitentiary.

The sufficiency of the evidence to support the conviction is the sole question presented for review.

About September 7, 1948, appellant, with his wife, mother-in-law, and daughter, Maria, the prosecutrix, were at the place of Schultz, where appellant was employed in shearing goats. On that night, the wife and mother-in-law slept in a barn, or garage, while appellant and prosecutrix slept in an automobile. Prosecutrix was seven years of age and in the first grade at school.

Prosecutrix could not speak English; she gave her testimony through an interpreter. The trial court, in the absence of the jury, interrogated prosecutrix to determine her competency as a witness. Inasmuch as no objection was made to her testifying, her competency as a witness is not before us.

We quote all the direct testimony of prosecutrix, as follows:

"My name is Maria Lozano. I live at Stonewall. I am seven years old. I am in the first grade in school. I know the defendant, Vicinte Lozano. He is my father. I am not married to him; Vicinte Lozano is not my husband.

"I know Mr. Willie Schultz who lives down there at Twin Sisters. No, I have never been down to Mr. Willie Schultz's farm. Yes, I do remember, as you say, that my father, Vincinte, sheared some sheep for Mr. Willie Schultz last September. Yes, I do remember that first night down there that the weather was bad and it was raining and my mother and grandmother slept in the garage. I slept in the car. I did not sleep in the car by myself. My father slept in the car with me. I don't remember what took place that night in the car.

"I slept in the back seat of the car. Vicnite slept in the front seat. Yes, Vicinte got over in the back seat with me. When he got over in the back seat with me he tore my pants. Yes, he tore my pants. As to what he did next, he got on top of me. Then grabbed me. Yes, I know where I pass water.

". . . . . . . . No, I do not know what a man's private parts are. No, he did not have his pants unbuttoned. No, he did not have his pants off. Yes, the thing that he put in that place where I pass water was the same thing that a man passes water with. Yes, he did take my pants off. As to how he did that, with his hands.

". . . . Yes, this is the first time that Vicinte did this thing to me.

"As to whether I went to see Doctor Feller, a doctor in Fredericksburg, last February, and in July, 1948, I do not know. He did this thing to me down where we were shearing. No, not at Stonewall, at Twin Sisters. No, Vicinte did not do this thing to me once before at Stonewall.

"That is right, some time ago, when I was in Stonewall, I was bleeding in the place where I pass water. I do not know what caused me to bleed. Yes, that was the time, when I was bleeding, that I went to Fredericksburg to see a doctor,—I do remember that now. No, at the time I started to bleed over there in Stonewall, Vicinte did not do the same thing to me there that he did down there at Willie Schultz's place.

"As to why I did not tell somebody when Vicinte did this to me last September at Mr. Schultz's place—I did not want to

tell anybody else. Yes, it is true, that Vicinte told me he would not buy me any dresses if I told anybody."

Dr. Feller testified that in February, 1948, and about seven months prior to the alleged rape, he examined prosecutrix and that at that time she complained of a burning sensation when she urinated. An examination of her urine showed that it contained pus. He prescribed for her for that condition and three days thereafter another examination of her urine showed that it was clear of any inflammation. He made no further examination at that time. In December, 1948, or about three months after the alleged rape, Dr. Feller again examined prosecutrix and found that she had gonorrhea. An examination of her privates revealed that the hymen was broken and completely destroyed, and the vagina swollen and irritated, due to the gonorrhea condition.

The foregoing is all the testimony upon which this conviction is predicated. Prosecutrix is not corroborated in any particular regarding the alleged rape.

Appellant denied the alleged rape and mistreatment of his daughter. He professed his love for her as a father. He admitted that about the time fixed by prosecutrix he slept in the automobile, but testified that he was in the front seat and that prosecutrix slept in the back seat of the automobile and that, during this time, his wife, the mother of prosecutrix, slept "close to the car." He testified that from September 17, 1948, or about ten days after the alleged rape, he had not seen prosecutrix until she appeared as a witness in the trial of this case.

The testimony of appellant is not contradicted by any witness other than the prosecutrix. Witnesses attested appellant's good reputation for being a peaceable and law-abiding citizen and for truth and veracity.

It is upon this testimony this court is called upon to determine whether this appellant should serve the five-year sentence imposed by the jury or should be awarded a new trial.

There is perhaps no rule of law more firmly fixed than that the jury are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to the testimony; and that their determination of fact issues is final and conclusive.

Under this rule it has been the consistent holding of this

court that if there be evidence from any source which shows the guilt of the accused of the offense charged this court will not disturb the finding of the jury based thereon. Supporting authorities will be found in 13 Texas Digest, Criminal Law, Key 1159, p. 959.

An exception to the rule stated is that when the testimony viewed in its strongest light from the standpoint of the state fails to make guilt reasonably certain, the verdict should be set aside. Green v. State, 97 Tex. Cr. R. 52, 260 S. W. 195.

It is in the light of these rules that the testimony of the prosecutrix must be examined, with a view of determining whether it is made reasonably certain that conviction should be sustained.

A child witness should possess sufficient intellect to relate transactions with respect to which she or he is interrogated. Powell v. State, 100 Tex. Cr. R. 541, 271 S. W. 915; Jiminez v. State, 103 Tex. Cr. R. 163, 280 S. W. 829; Click v. State, 66 S. W. 1104.

Here, the prosecutrix could not speak English. Her testimony depends upon the ability of an interpreter to correctly convey to her the questions asked and translate to the jury her answers thereto, all of which may account, to some degree at least, for the contradictions in her testimony. But we are bound by the record, as made; we have no authority to take from or add to. To affirm this conviction would be to disregard the positive testimony of the prosecutrix that the act of penetration— that is, that the male organ of the appellant penetrated between the labia of the privates of the prosecutrix—occurred while appellant was wearing his trousers which were buttoned up. Without proof of penetration beyond a reasonable doubt, the crime of rape has not been proven.

The failure of the state to corroborate the prosecutrix as to appellant's guilt, as also the failure of the prosecutrix to make outcry either at the time of the act or afterwards or to complain of pain in her privates, as a result of the act, are all facts that militate against the sufficiency of the state's case.

The record does not reflect when, nor by whom, appellant was first accused of the crime, nor does it reflect the circumstances under which the accusation was made.

With due deference to the verdict of the jury and the trial

court's approval thereof, we cannot bring ourselves, under the record here presented, to the conclusion that the appellant should be condemned to serve the sentence imposed. Having so concluded, our duty is clear.

The judgment is reversed and the cause is remanded.

Opinion approved by the court.