William D. NILSSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 44493.

Court of Criminal Appeals of Texas.

Feb. 16, 1972.

Rehearing Denied April 5, 1972.

Clyde W. Woody, Marian S. Rosen, Houston, for appellant.

Ted Butler, Dist. Atty., and Lucien B. Campbell, Asst. Dist. Atty., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for the offense of rape of a female under fifteen years of age. The state waived the death penalty and, after a finding of guilty by a jury, the judge assessed punishment at 20 years confinement in the Texas Department of Corrections.

The sufficiency of the evidence to support the conviction is challenged.

The record reflects that during part of the month of November, 1967, appellant

was a guest in the home of the father and mother of the prosecutrix, in San Antonio. He was a friend of the family and visited in the home on many occasions. He was previously married to a relative of the mother. At approximately 3 A.M. on the morning of November 14, 1967, the mother was awakened by the sound of one of her children screaming: "Bill, stop it; I can't stand it. I can't take any more." She awakened her husband, who investigated. The father found appellant and the eleven year old prosecutrix in her bedroom, which she shared with her four younger sisters. The prosecutrix was lying in her bed, which was the top bunk of a bunk bed. Appellant told the father that, "She is having a nightmare; she'll be O.K." The father returned to his bedroom when he heard a second scream. Both the father and the mother then went to the child's room and carried her to their bedroom.

Once the prosecutrix had been carried to her parents' bedroom, it was discovered that she had blood on her feet, legs, privates, and stomach. Also, it was discovered that the girl's pajama pants had been removed. At this point, appellant entered the room, said: "I did it to her," and pleaded that they not have him arrested because he "could not stand to go to jail for 50 years." The mother stated that the child was in a state of partial unconsciousness.

An ambulance was summoned, and the prosecutrix was taken to the hospital. The father and appellant remained at the home with the remaining children. The father did not want the children to see the blood. He found a trail of blood leading from the living room couch, where appellant had been sleeping, to the prosecutrix' bed and found blood on the bed and couch. Appellant then told the father that the child had come to him in the living room, during the night, and asked him to rub her privates. He complied and "got hot and took her." Appellant stated to the father that he was sorry and asked the father to shoot him instead of prosecuting him because he "couldn't stand staying in jail for a long period of time."

While cleaning the living room, the father found a pair of bloody men's undershorts beside appellant's shoes beneath the couch. He also found an open vial containing Trilene, which belonged to appellant, and asked the appellant to replace the lid so that the other children would not get into it. No blood was discovered on the vial.

In addition to the above, the parents testified that, on the night in question, appellant had been wearing white trousers. Approximately two weeks later these trousers were found in a closet in the home and blood stains were on the crotch of the trousers. Neither of the witnesses could remember whether the trousers were stained on the night in question.

The prosecutrix testified that, on the night of the occurrence, she had gone to bed at approximately eight P.M. All that she could remember of the period between the time she went to bed and the time at which she awoke at the hospital was that appellant had "smelly stuff" on a Kleenex which made her drowsy. She stated that, when she smelled it, she was on the couch in the living room.

Drs. James Aubrey Lewis and Richard Michael Ragsdale examined the prosecutrix on the night in question. Each testified that he had specialized in training in obstetrics and in gynecology.

Dr. Lewis testified that:

"On examining the head and neck area, there was a bruise of the right eyelid, an underlying hemorrhage of the sclera or the white part of the eye. Examining the arms and legs, or the extremities, there was a 2 x 3 centimeter or approximately 1½ x 1 yellow old bruise of the left anterior thigh a 2 x 2 centimeter purplish bruise of the right anterior thigh, a 1 x 1.5 centimeter bruise of the right lateral thigh. There was both fresh and clotted blood on the lower part of the

stomach or the abdomen, on the perineum or the vulva, the inner thighs and the lower legs and feet. There was a laceration or a cut of the hymen on the left side near the urethra, the tube that leads from the bladder to the outside just above the vagina.

. . . . . .

"(Indicating by diagram:) The first injury that I described was a tear of the hymen which surrounds the opening of the vagina, to the left side of the urethra —where the tube leads from the bladder to the outside—a tear in this area (indicating). There was another laceration or tear of the perineal body, which is similar to an episiotomy or an incision we make for delivery of a child. It was in the midline and it involved the inner lining or the vagina, the hymenal ring or hymen, and what is called the perineal body or the skin between the vaginal opening and the anus. It extended almost to the anus but did not involve the sphincter muscle around the anus or the lining of the rectum. There were three other lacerations or tears within the vagina. Looking at these (indicating) as the face of a clock, where it is 3:00 o'clock and 9:00 o'clock. You can see this better laterally, this (indicating) being the vagina, the cervix and uterus; and the bladder and the tube from the bladder leading to the outside and the rectum posteriorly. These lacerations were in the lateral vagina, and a 3 centimeter—approximately an inch and a half laceration—across the posterior wall of the vagina beneath the cervix."

He stated that he considered these to be major injuries, that they were caused by "some blunt object that was larger than the vagina [which] was inserted or forced into the vagina," and that the injuries were of the type which could have been caused by the insertion of an adult male penis. He also testified that the sperm test was inconclusive in that the "report described cells which were too degenerative to identify as spermatozoa for forensic purposes."

He explained that such degeneration was "possibly because of the presence of a large amount of blood in the vagina."

Dr. Ragsdale's testimony corroborated Dr. Lewis. Neither could definitely state that the "large blunt object" which had caused the injuries was the penis of an adult male. Both testified that the prosecutrix had lost a great amount of blood and that the deepest injury was four inches. Dr. Lewis further testified that Trilene was used primarily to relieve pain during labor.

The court charged the jury on the law of circumstantial evidence.

Appellant contends that the evidence is insufficient to show penetration of the vagina of the prosecutrix by a male sexual organ. It is his contention that the testimony of the doctors raised a question as to the exact object which caused the injuries. He concedes that sufficient evidence exists that he fondled the girl, but contends that the child's injuries could just as likely have been caused by a finger, plastic cylinder, or stick.

■ Proof necessary to show carnal knowledge, under Article 1187, Vernon's Ann.P.C., is that: "Penetration only is necessary to be proved on a trial for rape." While proof of the slightest penetration is sufficient, this element of the offense must be proved beyond a reasonable doubt. e. g., Johnson v. State, Tex.Cr.App., 449 S. W.2d 65; Hash v. State, 139 Tex.Cr.R. 532, 141 S.W.2d 345; Watkins v. State, 78 Tex.Cr.R. 65, 180 S.W. 116; Baldwin v. State, 15 Tex.App. 275; Davis v. State, 43 Tex. 189.

■ Penetration may be proved by circumstantial evidence. e.g. Preston v. State, 157 Tex.Cr.R. 228, 242 S.W.2d 436; Vasquez v. State, 145 Tex.Cr.R. 376, 167 S.W.2d 1030; Word v. State, 12 Tex. App. 174. Where circumstantial evidence forms the basis for the conviction, the state must disprove every outstanding reasonable hypothesis except for the guilt of

the accused for the evidence to be sufficient to support the conviction. See, Preston v. State, supra; Lozano v. State, 154 Tex.Cr.R. 229, 226 S.W.2d 118. There is no requirement that the prosecutrix be able to testify as to penetration.

> "It would be a monstrous doctrine that villains who had rendered their victims insensible in order to effect their purposes should be freed from punishment because the victim could not swear positively to the act of penetration accomplished upon her during her state of insensibility." Word v. State, supra, 12 Tex.App. at 183.

■ In the instant case the father of the prosecutrix testified that, shortly after the incident, appellant:

> ". . . said that (the prosecutrix) came into his bed and asked him to rub her *in her private parts,* is the way he put it. And he did, and *he got hot and took her."* (Emphasis added)

This statement by the appellant certainly infers that penetration was achieved. The evidence is undisputed that a large blunt object was forced into the child's vagina. Such object was larger than the child's vagina. Appellant contends that the answers given by the medical experts to hypothetical questions raised the outstanding hypothesis that an object other than the penis of an adult male was used. In support of this contention, appellant relies on the holdings of this court in Vasquez v. State, 167 S.W.2d 1030, and in Wair v. State, 133 Tex.Cr.R. 26, 106 S.W.2d 704.

Vasquez v. State, supra, stands for the proposition that

> ". . . the appellate court has frequently treated the case as one of reasonable doubt where, for aught that appeared, there was available to the state testimony throwing additional light on

the facts, especially in cases of the absence of testimony to show the basic facts." Vasquez v. State, supra, 167 S. W.2d at 1034.[1]

In that case, the eight year old prosecutrix was not called to testify. The grandmother of the girl related what the child had told her, but such statement did not include any mention of the object used to penetrate the child. The state relied solely on the grandmother's testimony, the accused's admission that he had fondled the child, and the medical testimony to prove penetration. This court reversed because of the failure of the state to call the prosecutrix, the only witness who could have given direct testimony concerning the penetration.

■ In the instant case, the record reflects that the prosecutrix testified at the trial. She could not remember the actual assault but could remember that appellant had "smelly stuff" on a Kleenex which made her drowsy and that she was on the living room couch when she smelled it. This statement was corroborated by the finding of the open vial of Trilene near the couch shortly after the child had been taken to the hospital and by the expert testimony concerning the effects of Trilene. Where there is evidence that the acts of an accused rendered his victim unconscious, the testimony of the victim concerning penetration is not essential to the state's case, so long as that element of the offense can be established by other evidence. Preston v. State, supra; Word v. State, supra. The prosecutrix having testified at the trial, this court's holding in Vasquez v. State, supra, is inapplicable to the instant case.

In Wair, supra, the thirteen year old prosecutrix, even though fully conscious, could not state with certainty what had penetrated her or even whether the accused's trousers were unbuttoned or had

been removed. She testified that her undergarments had not been removed and that she never saw his privates exposed.

The evidence in the instant case showing that the inability of the prosecutrix to testify concerning the penetration was caused by the acts of the accused, makes the Wair decision inapplicable.

Moreover, in Wair the evidence raised the outstanding hypothesis that the injuries could have been sustained through the mother's use of a douche on the child or through the insertion of appellant's two fingers. The mother testified as to having used a douche on the child, and the accused had taken the stand and testified that he had fondled the child. The holding in Wair was that the evidence was insufficient to prove penetration where the prosecutrix, though conscious during the alleged assault, was unable to identify the object which had penetrated her vagina and where the evidence raised an outstanding reasonable hypothesis which was inconsistent with a finding of the accused's guilt.

■ An outstanding hypothesis, to be reasonable, must be raised by the evidence. Compare Jones v. State, Tex.Cr.App., 392 S.W.2d 129, with Preston v. State, supra. Where answers to hypothetical questions propounded to an expert witness raise an outstanding hypothesis, such hypothesis must be substantiated by other evidence in the case. In order for a reasonable hypothesis to be outstanding, there must be no competent evidence to the contrary. See generally, Rodriquez v. State, 164 Tex.Cr.R. 641, 301 S.W.2d 921; Sanders v. State, 127 Tex.Cr.R. 55, 75 S.W.2d 116. In the instant case, there is no evidence of the presence of any other object which could have caused the injuries sustained by the child.[2] The answers to the hypothetical questions being unsupported by other evidence and the evidence showing the prosecutrix to have been unconscious during the attack, distinguish the instant case from Wair v. State, supra.

■ Appellant also contends that the evidence shows that it would have been impossible for him to have achieved penetration. He claims that the evidence is undisputed that he wore a cast on his leg, that he and the prosecutrix were found in the children's bedroom, that there were four other children in the room, and that the prosecutrix was on the top bunk of the bunk bed.

This court has reversed cases in which the facts related by the prosecutrix were so out of line with human experience that a reasonable doubt as to whether the act was committed had been raised. See Lozano v. State, 154 Tex.Cr.R. 229, 226 S.W.2d 118; Dodson v. State, 129 Tex.Cr.R. 151, 83 S.W.2d 992; Green v. State, 97 Tex. Cr.R. 52, 260 S.W. 195.[3] However, where the evidence is in dispute, such determination must be left to the jury. Faulkner v. State, Tex.Cr.App., 390 S.W.2d 754. In the instant case, the statements of the appellant and the testimony of the accused show that the act took place on the living room couch. This testimony is corroborated by evidence showing blood on the couch, a trail of blood from the couch to the child's bed, and the bloody undershorts beneath the couch.

We hold that the statements of the appellant were sufficiently corroborated by other evidence for the question of guilt or innocence to go to the jury. Brown v.

2. The record reflects that only other object in the room which would substantiate the answers given by the doctors was the plastic vial. However, the vial was open and no blood appeared thereon.

3. In each of the cases, the facts related by the prosecutrix would have made penetration by the accused a physical impossibility. There being no other evidence in these cases which would show penetration and the testimony of the prosecutrix having raised a reasonable hypothesis contrary to a finding of the accused's guilt, the evidence was held to be insufficient to prove penetration. See also Baldwin v. State, 15 Tex.App. 275.

**598** 

State, 172 Tex.Cr.R. 189, 355 S.W.2d 534; Preston v. State, supra; Weir v. State, 155 Tex.Cr.R. 469, 236 S.W.2d 150; Lynch v. State, 150 Tex.Cr.R. 57, 199 S.W.2d 780; Tomlinson v. State, 137 Tex.Cr.R. 600, 132 S.W.2d 413; Brown v. State, 112 Tex.Cr. R. 92, 14 S.W.2d 63; Watkins v. State, supra; Word v. State, supra.

 It is also contended that the trial judge commented on the weight of the evidence while ruling on an objection made by the prosecutor during appellant's argument to the jury. No objection to the alleged comment was made until after he had concluded his argument, the state had made a closing argument, and the jury had retired to deliberate. Comments by the trial judge are not reviewable absent timely objection. Steese v. State, 170 Tex.Cr. R. 269, 340 S.W.2d 49. The objection came too late to preserve the alleged error. See generally, Northcutt v. State, 154 Tex.Cr.R. 600, 229 S.W.2d 373.

By his fourth ground of error, appellant complains that the trial court did not correctly charge the jury on the issue of insanity.[4] He argues that the charge improperly placed the burden on appellant to prove his insanity by a preponderance of the evidence.

 We first note that appellant made no objection to the court's charge on this issue. Nor did he request a different instruction. Under Articles 36.14 and 36.15, Vernon's Ann.C.C.P., he has waived his objections to the charge. See, Hill v. State, Tex.Cr.App., 466 S.W.2d 791; Harris v. State, Tex.Cr.App., 465 S.W.2d 175; Bellah v. State, Tex.Cr.App., 415 S.W.2d 418; Fuller v. State, Tex.Cr.App., 423 S. W.2d 924; Knoeppel v. State, Tex.Cr.App., 382 S.W.2d 493.

He now argues that, even in the absence of proper objections, the court's charge de-

prived appellant of "effective assistance of counsel, a fair and impartial trial, due process of law, and equal protection of the law as guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States."

His contention is that the Supreme Court of the United States in In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970), made the federal procedural rule regarding proof of insanity a constitutional requirement under the due process clause of the Fourteenth Amendment. The federal rule is that, once the accused has placed his sanity in issue, the prosecution bears the burden of proving sanity beyond a reasonable doubt. Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895).

 The due process clause requires the prosecution to prove the guilt of an accused beyond a reasonable doubt. In Re Winship, supra. However, the federal procedural rule for proving sanity, first stated by the Supreme Court in Davis v. United States, supra, is not of constitutional dimension. Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). The states are free to develop their own procedure for dealing with this issue. Leland v. Oregon, supra. The continuing viability of reasoning of the Supreme Court in Leland has been reaffirmed in recent decisions by that court. See, McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968) (Black & Harlan, JJ. concurring); see also, Lego v. Twomey, 404 U.S. 417, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). We hold that the trial court's charge on the issue of insanity, placing the burden on appellant to prove insanity by a preponderance of the evidence, does not violate due process of law.

4. In his supplemental brief, appellant has expanded his discussion on this point and has divided his discussion into three separate grounds of error. We will discuss these together.

Article 35, V.A.P.C., provides:

"The rules of evidence known to the common law as to the proof of insanity shall be observed in all trials where that question is an issue."

Article 46.02, V.A.C.C.P., provides the procedural rules to be followed when insanity is pled in defense or in bar. We find no merit to appellant's contention that the Rules of Civil Procedure apply where insanity has been raised as a defense and that this court must determine the sufficiency of the evidence or the burden of proof on the issue of sanity under civil rules.

The Texas rule regarding the burden of proving insanity by a preponderance of the evidence arises under Article 35, V.A.P.C. Every person is presumed to be sane and to have sufficient judgment to be held accountable for his acts until the contrary is established; and a defendant who pleads insanity bears the burden of proof on that issue by a preponderance of the evidence. Hare v. State, Tex.Cr.App., 460 S.W.2d 124; Forder v. State, Tex.Cr.App., 456 S.W.2d 378; Cross v. State, Tex.Cr.App., 446 S.W.2d 314; Fuller v. State, Tex.Cr.App., 423 S.W.2d 924; Bingham v. State, 161 Tex.Cr.R. 204, 275 S.W.2d 819; Parsons v. State, 160 Tex.Cr.R. 387, 271 S.W.2d 643; Wenck v. State, 156 Tex.Cr.R. 50, 238 S.W.2d 793; Ross v. State, 153 Tex.Cr.R. 312, 220 S.W.2d 137. Where the accused can show that an unvacated judgment of insanity exists the presumption disappears; and the burden of proof in such cases shifts to the state. Ex parte Tuttle, Tex.Cr.App., 445 S.W.2d 194; Fuller v. State, supra; Gephart v. State, 157 Tex.Cr.R. 414, 249 S.W.2d 612; Murray v. State, Tex.Cr.App., 182 S.W.2d 475. The record in the case at bar reflects no unvacated judgment of insanity for appellant prior to the commission of the offense; and under the holdings in the above cited cases, the burden of proof on this issue was properly placed on him.

■ He also contends that he was deprived of due process by the failure of the trial court to conduct a separate hearing to determine his sanity at the time the offense was committed. To support this contention, he relies on the rule that a jury should be given an opportunity to pass on the competency of the accused to stand trial unencumbered by evidence of the specific offense with which he is charged. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); McCarter v. State, Tex.Cr.App., 438 S.W.2d 575; Townsend v. State, Tex.Cr.App., 427 S.W.2d 55. His reliance on these cases is misplaced.

Insanity as a defense should not be confused with the issue of present insanity. Fuller v. State, supra at fn. 2; see, Article 46.02, V.A.C.C.P. The cases upon which appellant relies deal with the issue of competency to stand trial and not with insanity as a defense. Where the accused is pleading that he was insane at the time of the commission of the offense, his actions at such time are relevant to a determination of whether he knew the difference between right and wrong and understood the nature and quality of his act. See, Kindle v. State, 162 Tex.Cr.R. 395, 285 S.W.2d 740. Therefore, it would be impossible to separate the factual context in which an offense was created from a determination of the state of mind of the accused. We hold that appellant was not entitled to a separate hearing on the issue of insanity as a defense. Cross v. State, supra.

■ Finally, appellant contends that the trial court erred in excluding from evidence certain photographs and motion pictures of the appellant, purporting to show the nature of the injuries appellant had received in an automobile accident prior to the date of the offense. He urges that the photographs were relevant to a determination of the cause of his alleged insanity.

A determination on the admissibility of photographic evidence rests largely in the

discretion of the trial judge, and this court will not disturb his decision absent a clear abuse of discretion. Martin v. State, Tex. Cr.App., 475 S.W.2d 265 (1972); Lanham v. State, Tex.Cr.App., 474 S.W.2d 197. While the photographs were not admitted, the nature of these injuries was fully described by Dr. Henry H. Dixon, who appeared as a witness for appellant. No abuse of discretion has been shown.

Appellant's remaining grounds of error were brought forth in a supplementary brief which was not filed in the trial court. We have carefully examined same and have found nothing therein which merits review in the interest of justice, under Article 40.09, Section 13, V.A.C.C.P.

Finding no reversible error, the judgment is affirmed.