NUMBER 13-98-430-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


IVAN GALVAN RODRIGUEZ
, Appellant,


v.



THE STATE OF TEXAS
, Appellee.

___________________________________________________________________


On appeal from the 206th District Court


of Hidalgo County, Texas.


___________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and

Yañez

Opinion by Justice Dorsey



 Appellant, Ivan Galvan Rodriguez, was indicted for capital murder. 
The jury found him not guilty of both capital murder and murder, but
found him guilty of the lesser-included offense of aggravated sexual
assault, assessing his punishment at nine years in prison. By two
issues appellant complains that the trial court abused its discretion in
denying his motion for new trial because the evidence is legally
insufficient to support his conviction, and he asserts that the trial court
erred in entering judgment because legally the evidence fails to prove
the elements of aggravated sexual assault. We affirm.

I. Facts


 The State's evidence showed that on October 2, 1996, the victim,
Maria Isabel Zamora, left home to pick up appellant. She was wearing
shorts, along with a shirt and vest. The next day her body was found
in an open field near Mission, Texas, nude from the waist up, with her
shorts unzipped and partially pulled down. A surgical type knife was
found next to the body. An investigator testified that due to a deep
indentation in the ground and the amount of dirt on the body the body
was probably pressed or forced down on the ground.

 After her body was found a deputy sheriff discovered appellant
driving the victim's Chevy Blazer. He was taken into custody and gave
a written confession to Florentino Garza, a lieutenant with the Hidalgo
County Sheriff's Office. Garza testified that prior to taking his statement
he advised appellant of his Miranda rights, that he agreed to waive his
rights, that he never requested an attorney and did not ask to terminate
the interview. Garza testified that neither threats nor coercion were
directed toward appellant during any of the questioning, nor did he
make any promises to appellant in exchange for his statement. Garza's
testimony was that appellant understood his rights and that he
knowingly and voluntarily gave the statement. As appellant gave Garza
the statement, Garza wrote it down word for word, giving appellant the
opportunity to read it when he had finished. Garza explained to him
that he could make alterations to the statement. The statement
declared, in relevant part:

 Yesterday Isabel [the deceased] called me at my house. . . . 
She said she would pick me up around 8:30 p.m. We went
cruising in Edinburg in her green Blazer. . . . We then
headed towards Mission cruising. . . . She kept telling me
that she wanted to park somewhere and f---. . . . She . . .
started kissing me. She took off her blouse. She wanted me
to f--- her. We went outside the Blazer. We started talking
outside. She lowered her shorts. She then unbutton my
pants. She then bend [sic] down and we had sex. We finish
[sic] having sex. . . . Isabel started threatening me to get
together with her or she would hurt my girlfriend. I got mad
and I stab [sic] her with a piece of knife that I had gotten at
a friends house. Its a rod with a knife at the point. I had the
knife in my pants pocket. I must have stabbed her about six
times. I got back in the Blazer and I took off . . . . I left her
there on the ground. . . .


 Laboratory analysis of a semen stain on Zamora's shorts identified
a semen-specific protein called P30, which is found only in semen. 
DNA was extracted from this specimen; however, the quantity of the
DNA was insufficient to make a comparison. 

 Dr. Ruben Santos performed the autopsy and found twenty-seven
punctures or wounds to Zamora's body, which he said were made by
a surgical scalpel. Some of these punctures severed the jugular system
in her neck. She also had bruises on her body and a black eye. She had
a defensive puncture wound to her right palm. He testified that the
wound is "defensive" because people usually use the hands to protect
themselves against aggression from a weapon. He said that she could
have been in a struggle because the wounds were not fatal except for
those to the neck. He took oral, rectal, and vaginal swabs from the
body but found no spermatozoa when examining these swabs.

 Appellant testified that he knew Zamora for about one and one-half months before her death. He had dated her five or six times, and
had consensual sex with her a few times. He said that on October 2,
1996 Zamora stopped by his house and lent him her Blazer. He did not
see her again after that. His testimony was that his written statement
was coerced. He said that Garza told him that "if I didn't say it was me,
if I didn't write my initials, my name, the statement, that to be sure that
it was going to put some more charges against me." He testified that
Garza did not read him his rights, did not let him read the statement,
and promised to help him if he signed the statement. He signed the
statement because Garza told him that "they had proof of everything
that I had done it." He denied killing or stabbing Zamora.

 Richard Ofshe, Ph.D., a social psychologist, testified as an expert
for the defense concerning police-interrogation techniques. His
testimony was that police, by threatening people and using coercive
interrogation techniques, can get a suspect who is innocent to give a
false confession.

 On cross-examination Dr. Ofshe admitted that he was not familiar
with the procedures at the Hidalgo County Sheriff's Office and that he
was not saying that the confession in this case was false. He had no
personal knowledge of the interrogation in this case and did not debrief
appellant about the interrogation.

II. Analysis


 By issue one appellant asserts that the trial court abused its
discretion by denying his motion for new trial because the evidence is
legally insufficient to support his conviction. By his second issue he
asserts that the trial court erred in entering judgment because legally
the evidence failed to prove beyond a reasonable doubt the elements of
aggravated sexual assault. When reviewing the legal sufficiency of the
evidence we follow the test set forth in Jackson v. Virginia, 443 U.S.
307, 318-19 (1979); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim.
App. 1999).

 Initially, we point out that the evidence showed that a rational jury
could find that appellant understood and waived his rights prior to
making his written statement and that he knowingly, intelligently, and
voluntarily made his written statement. 

 The charge provided that the jury could find appellant guilty of
aggravated sexual assault if it found beyond a reasonable doubt that he 

 intentionally or knowingly, without the consent of Maria
Isabel Zamora, a female, and by the use of physical force or
violence directed against Maria Isabel Zamora that compelled
submission or participation by Maria Isabel Zamora, cause
the penetration of the female sexual organ of Maria Isabel
Zamora by inserting his, the Defendant's, sexual organ
therein, and that the Defendant, in the course of the same
criminal episode, intentionally or knowingly caused Maria
Isabel Zamora serious bodily injury by stabbing her with a
knife. . . .


 Appellant argues that any inference of penetration from all the
evidence is merely speculative. We disagree. There is no requirement
that the victim be able to testify to penetration; it may be proved by
circumstantial evidence or other evidence. Villalon v. State, 791 S.W.2d
130, 134 (Tex. Crim. App. 1990); Nilsson v. State, 477 S.W.2d 592,
595-96 (Tex. Crim. App. 1972)(1) (holding that in prosecution for rape,
"penetration may be proved by circumstantial evidence"). The jury may
infer penetration from the circumstances, without direct proof. 
Almendaris v. State, 73 S.W. 1055, 1055 (Tex. Crim. App. 1903).

 In this case the evidence supporting penetration is that Zamora's
body was found nude from the waist up. Her shorts were unzipped
and partially pulled down. A semen stain was found on her shorts. 
Soil on the body and an indentation in the ground showed that she had
been forced or pressed to the ground. This evidence corroborates
appellant's written confession in which he stated that he had sex with
her. Further she had bruises, a black eye, and twenty-seven punctures
or wounds to her body, including a defensive wound to the right palm. 
A surgical knife was found next to the body. Dr. Santos testified that
she could have been in a struggle because the wounds were not fatal
except for those to the neck. Although appellant stated in his
confession that he had stabbed Zamora after they had sex, the jury was
free to find that the sexual activity occurred pursuant to a struggle and
was, therefore, non-consensual. Viewing the evidence in the light most
favorable to the jury's verdict we believe that a rational trier of fact could
infer beyond a reasonable doubt that appellant by the use of physical
force or violence directed against Maria Isabel Zamora that compelled
submission or participation by her, penetrated her female sexual organ
with his sexual organ, that she did not consent to this sexual activity,
and that he caused her serious bodily injury by stabbing her with a
knife. We hold that the evidence is legally sufficient to support the
jury's verdict and that the trial court did not abuse its discretion by
refusing to grant the motion for new trial. We overrule issues one and
two.

 We affirm the trial court's judgment.


 ______________________________

 J. BONNER DORSEY,

 Justice


Do not publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 31st day of August, 2000.

1. In Nilsson the court stated, "It would be a monstrous doctrine
that villains who had rendered their victims insensible in order to effect
their purposes should be freed from punishment because the victim
could not swear positively to the act of penetration accomplished upon
her during her state of insensibility." Id. at 596.