NO.
12-05-00417-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

MARK ANTHONY JOHNSON,      §          APPEAL FROM THE 145TH

APPELLANT

 

V.        §          JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          NACOGDOCHES
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

            Mark
Anthony Johnson appeals his conviction for sexual assault.  In three issues, he argues that the evidence
was insufficient to support his conviction and that he received ineffective
assistance of counsel.  We affirm.

 

Background

            Appellant met S.F. when she was
fourteen years old.  S.F. gave Appellant
her phone number, and the two talked to one another on the telephone from time
to time over the next two years. 
Initially, Appellant told S.F. that he was eighteen years old, but later
told her that he was twenty- five.  S.F.
was sixteen when they met in person on June 17, 2000.  Appellant had his young daughter with him at
the time and the three, along with S.F.’s friend Angela Wilson, drove to a gas
station and a liquor store together. 
Appellant bought S.F. gasoline for her car and a pack of
cigarettes.  They went to Appellant’s
mother’s house to drop off his daughter, and then the three went to Appellant’s
trailer house.








            At his house, Appellant provided
S.F. and her friend with a soft drink, orange juice, and Crown Royal
whisky.  S.F. drank a number of shots of
the whisky.  She was taking prescription
medication and soon began to feel the effects of the alcohol.  Specifically, S.F. became disoriented and
then “blacked out.”  She remembered being
in a back bedroom and Angela coming to help her.  She also remembered telling her friend that
Appellant had undone her pants.  The next
things she remembered were being at a friend’s house and then being at her own
house.

            S.F. could not say whether she had
sexual intercourse that night.  S.F. said
later that her vagina hurt after the incident, although she said that she did
not have “internal pain.”  S.F.’s friend
Angela Wilson was in the trailer house during the incident and consumed one
shot of whisky.  She saw Appellant take
S.F. to a bedroom in the house after S.F. became disoriented.  She followed them and saw S.F. lying on the
bed with her belt undone.  S.F. said, “He’s
undoing my pants.”  Appellant then
physically removed Angela from the bedroom and placed her in the bathroom.  Angela went back to the room and was able to
see in through the cracked door. 
Appellant was in his boxer shorts and told S.F. to say that she was “fine.”  Appellant then locked Angela out of the
bedroom.  Angela began to gather their
belongings, including compact discs the two had brought and their shoes and
keys.  After she gathered the things from
another bedroom, Angela saw Appellant and S.F. standing in the living
room.  S.F. was about to cry and seemed
to be upset.  As they left, S.F. told
Angela that Appellant had been “sexually active towards her.”  

            Angela took S.F. to a friend’s house
and then to S.F.’s house.  S.F.’s parents
took her to the police station, and she was later examined in the
hospital.  The hospital staff collected
evidence from S.F. including vaginal swabs that contained semen.  S.F. told a nurse that she could not remember
if a sexual act occurred but remembered the assailant undoing her jeans and
remembered putting her underwear and jeans back on.  S.F. also told the nurse that she had told
the assailant that she was menstruating and he said that did not mean that he
could not “rub on” her.  She told the
nurse that a tampon was present before the incident but not after and she did
not remember taking it out.  She also
said that her vagina hurt afterwards. 
Subsequent DNA testing revealed that Appellant was the contributor of
the semen.

            Appellant was indicted for the
felony offense of sexual assault.  He
pleaded not guilty, and a trial was held. 
The jury found him guilty and assessed punishment at five years of
imprisonment.  Appellant did not file a
notice of appeal.  In 2005, the Texas
Court of Criminal Appeals granted Appellant’s application for habeas corpus,
and allowed him to file an out of time appeal. 
Ex parte Johnson, Ap. 75,271 (Tex. Crim. App. October 26,
2005) (per curiam) (not designated for publication).  This appeal followed.  

 

Sufficiency of the Evidence

            In his first and second issues,
Appellant argues that the evidence was insufficient to support his
conviction.  Specifically, Appellant
argues that there was insufficient evidence that he penetrated S.F.’s sexual
organ.  

Standards
of Review

            The due process guarantee of the
Fourteenth Amendment requires that a conviction be supported by legally
sufficient evidence.  See Jackson
v. Virginia, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed.
2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim.
App. 2004); Willis v. State, 192 S.W.3d 585, 592 (Tex. App.–Tyler
2006, pet. ref’d).  Evidence is not
legally sufficient if, when viewing the evidence in a light most favorable to
the verdict, no rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. 
See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; see
also Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

            While legal sufficiency review is
all that is required by the U.S. Constitution, the Texas Court of Criminal
Appeals has determined that the Texas Constitution requires further review of
the factual sufficiency of the evidence. 
Clewis v. State, 922 S.W.2d 126, 129–30 (Tex. Crim. App.
1996).    We review the factual
sufficiency of the evidence without the light most favorable to the verdict,
and we determine whether the evidence supporting the verdict is so obviously
weak as to undermine our confidence in the jury’s determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.  Johnson v. State,
23, S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (Evidence is factually insufficient
only when reviewing court objectively concludes that the great weight and
preponderance of the evidence contradicts the jury’s verdict.).

            Under either standard, our role is
that of appellate review, and the fact finder is the sole judge of the weight
and credibility of a witness’s testimony. 
Wesbrook v. State, 29 S.W.3d 103, 111–12 (Tex. Crim. App.
2000).  The fact finder may choose to
believe all, some, or none of a witness’s testimony.  Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986).

            The sufficiency of the evidence is
measured against the offense as defined by a hypothetically correct jury
charge.  See Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
A hypothetically correct jury charge “accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State’s
burden of proof or unnecessarily restrict the State’s theories of liability,
and adequately describes the particular offense for which the defendant is
tried.”  Id.

            As alleged in the amended
indictment, the State was required to prove that S.F. was a child younger than
seventeen and not Appellant’s spouse and that Appellant intentionally or
knowingly caused the penetration of her sexual organ with his sexual
organ.  See Tex. Pen. Code Ann. § 22.011
(Vernon 2006).[1] 

Analysis

            With respect to the sufficiency of
the evidence, Appellant argues only that it was not proven that he penetrated
S.F.’s sexual organ.  In the context of
sexual assault, proof of the slightest penetration of any part of the female
sexual organ is sufficient to meet the requirement of “penetration.”  See Nilsson v. State, 477
S.W.2d 592, 595 (Tex. Crim. App. 1972); see also Vernon v. State,
841 S.W.2d 407, 409 (Tex. Crim. App. 1992). 
There need not be proof of penetration of the vagina, and proof of
penetration may be circumstantial.  See Vernon, 841 S.W.2d at
409–10; Nilsson, 477 S.W.2d at 595-97.

            The complaining witness in this case
was unable to testify that her sexual organ was penetrated because she did not
remember the events. Her friend, who was nearby during the incident, did not
testify that she witnessed any penetration. She testified only that Appellant
removed her from the room, that S.F. was intoxicated and had her pants undone,
and that S.F. said afterwards that Appellant had been sexually active towards
her.   

            There is evidence of penetration in
the form of Appellant’s semen, which was recovered on a “vaginal swab” taken
from S.F.  The vaginal canal is well
within the female “sexual organ,” and the vagina itself need not be penetrated
for there to be a penetration of the sexual organ.  See Vernon, 841 S.W.2d
at 409–10.  Appellant is correct that the
testimony describing where the vaginal swabs were taken from is amenable to
more than one interpretation.  When first
discussing the swab, the nurse who witnessed the examination simply called it a
“vaginal swab” without further explanation. 
Later she was asked, “Ma’am, the vaginal swab that you observed taken
from the victim . . . was that taken from inside the vagina and inside the
vaginal canal?”  She answered, “It should
have been, yes, ma’am.”  Subsequently,
she said the swab is generally taken from the vagina.  When asked if the swab is “wiped around the
outside” of the vagina, the nurse said, “No.”

            In the strictest sense, this
testimony leaves open a possibility that the vaginal swab was taken from
somewhere other than the vagina.  But we
think this reading is too technical and, in the context of the circumstantial
evidence, not reasonable.  First, the
swab was a “vaginal swab.”  The record
does not indicate that this is a precisely defined medical procedure, but it is
on par with saying that an “eye examination” is an examination of the eye.  That is to say, the name is a description of
the procedure.  In the context of the
testimony, the jury could have reasonably concluded that the vaginal swab was
taken from the vagina.  The nurse’s use
of the language “should have been” is simply the way some people speak.  It can be an equivocation, but it is also a
figure of speech, and the jury was in the best position to determine what she
meant.  The statement could be nothing
more than an acknowledgment that the swab could be used for other
purposes.  When asked if the swab is
wiped around the outside of the vagina the witness said, unequivocally, “No.”[2]


            This testimony is not the only
evidence of penetration.  The complaining
witness told two people that her vagina hurt after the incident and made
statements about Appellant acting towards her in a sexual manner.  Also, and while far from definitive,
Appellant’s actions of providing her with intoxicating liquors, taking down her
pants, taking off his own pants, removing her friend from the room, and locking
the door suggest that he acted to fulfill his sexual desires.  

            Under these circumstances, we
conclude that the evidence is sufficient, both legally and factually, to
support the verdict.  Viewed in a light
most favorable to the verdict, a rational jury could have concluded that Appellant’s
semen was found in S.F.’s vagina or in a place so closely associated with her
vagina that the further conclusion that Appellant penetrated S.F.’s sexual
organ would be reasonable.  Without the
light favoring the verdict, we do not conclude that the great weight and
preponderance of the evidence contradicts the verdict.  Different finders of fact might interpret the
nurse’s testimony in different ways.  The
evidence supporting the jury’s conclusion that Appellant penetrated S.F.’s
sexual organ is not obviously weak or outweighed by contrary proof.  The jury was in the best position to
interpret the nurse’s testimony, and their synthesis of that testimony and the
other evidence was reasonable.  We
overrule Appellant’s first and second issues. 

 

Ineffective Assistance of Counsel

            In his third issue, Appellant
asserts that he received ineffective assistance of counsel.  Specifically, he complains that his attorney
should have retained an expert either to testify or to assist in the
preparation of his cross examination of the State’s witness who analyzed the
semen and concluded that Appellant was the contributor.

Applicable
Law

            Claims of ineffective assistance of
counsel are evaluated under the two step analysis articulated in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674
(1984).  The first step requires the
appellant to demonstrate that trial counsel’s representation fell below an
objective standard of reasonableness under prevailing professional norms.  See Strickland, 466
U.S. at 688, 104 S. Ct. at 2065; McFarland v. State, 928 S.W.2d
482, 500 (Tex. Crim. App. 1996).  An
ineffective assistance of counsel claim is not reviewed for isolated or
incidental deviations from professional norms, but on the basis of the totality
of the representation.  See Strickland,
466 U.S. at 695, 104 S. Ct. at 2069.

            The second step requires the
appellant to show prejudice from the deficient performance of his
attorney.  See Hernandez v.
State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).  To establish prejudice, an appellant must
show that there is a reasonable probability that the result of the proceeding
would have been different but for counsel’s deficient performance.  See Strickland, 466
U.S. at 694, 104 S. Ct. at 2068.  

            We begin with the strong presumption
that counsel’s conduct falls with the wide range of reasonable professional
assistance.  See Jackson v.
State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  As part of this presumption, we presume
counsel’s actions and decisions were reasonable and were motivated by sound
trial strategy.  See id.  Appellant has the burden of proving
ineffective assistance of counsel.  See
id.  Generally, the record on
direct appeal will be insufficient to prove the deficient performance prong of
the Strickland standard.  See
Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Analysis

            Appellant argues that trial
counsel should have sought a defense expert “to question the reliability of the
state’s evidence, point out issues regarding contamination of samples, and [to]
question the accuracy [of] the state’s expert[’s] statistical analysis and the
resulting conclusions drawn therefrom of Appellant’s involvement.”  There is no evidence in the record of trial
counsel’s strategy in this matter.  In
the absence of evidence about trial counsel’s reasoning, we will generally
presume that counsel had a plausible reason for his actions.  Thompson v. State, 9 S.W.3d
808, 814 (Tex. Crim. App. 1999).  

            There is no evidence that trial
counsel did not consult with an expert witness while preparing for trial.  His cross examination of the State’s witness
was impeccable, and he required the witness to admit an error in his previous
testimony.  Even if we assumed that
counsel did not consult with an expert, Appellant has not shown deficient
performance.  In the context of failing
to call witnesses, the court of criminal appeals has held that an ineffective
assistance of counsel claim can be evaluated only when the proposed testimony
is in the record.  See Butler v.
State, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986) (Counsel’s failure to
call a witness is irrelevant absent a showing that the witness was available
and appellant would have benefitted from the witness’s testimony.); Bates
v. State, 88 S.W.3d 724, 728 (Tex. App.–Tyler 2002, pet. ref'd).  This principle has been applied to instances
where counsel failed to request an expert witness.  See Cate v. State, 124 S.W.3d
922, 927 (Tex. App.–Amarillo 2004, pet. ref'd); Teixeira v. State,
89 S.W.3d 190, 194 (Tex. App.–Texarkana 2002, pet. ref’d); see also Taylor
v. State, No. 12-05-00314-CR, 2006 Tex. App. LEXIS 6080, at *12-13
(Tex. App.–Tyler July 12, 2006, pet. ref’d) (mem. op., not designated for
publication) (“Appellant has pointed to no deficiency in his counsel’s
performance resulting from his lack of assistance by a defense DNA expert.”).  Nothing in the record shows that engaging an
expert witness would have assisted counsel or allowed him to successfully
challenge the State’s evidence. 
Therefore, we cannot conclude that counsel should have employed an
expert to assist with his preparation.  

            With respect to calling an expert as
a witness, the previously described principle applies without
extrapolation.  There is no evidence in
the record as to what testimony an expert witness could have offered in this
matter, and we cannot conclude that a witness should have been called when the
record does not reveal that the witness’s testimony would have helped the
defendant.  See Butler, 716
S.W.2d at 55.

            Appellant has not shown that trial
counsel’s representation fell below professional norms.  We overrule Appellant’s third issue.

            

Disposition

            We affirm the judgment
of the trial court.

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion delivered March 7, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] The State need only
have alleged that the child’s sexual organ was penetrated by any means or that
the child’s sexual organ contacted Appellant’s mouth, anus, or sexual
organ.  See Tex. Pen. Code Ann. §§ 22.011
(a)(2)(A), (C).  Because the statute
criminalizes several alternate acts, the State’s election of “penetration”
instead of “contact” is meaningful, and the State was required to prove
penetration.  See Gollihar v. State,
46 S.W.3d 243, 254–55 (Tex. Crim. App. 2001). 
Because Appellant argues only that there was no proof of penetration, we
need not determine if the allegation that the penetration was by his sexual
organ was an element of the offense.

 





[2] The expert witness who evaluated the evidence testified that “[o]n
vaginal samples, usually what it consists of is a vaginal swab from the
orifice.”  When read in conjunction with
the nurse’s testimony, we take this to mean that a vaginal swab is generally
taken from the vagina and that a deviation from that norm would have been noted
by the nurse when she was asked.