NO. 07-08-0473-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 14, 2009

_____

ROY LEE MARTINEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 5785; HONORABLE KELLY G. MOORE, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Roy Lee Martinez, was convicted by a jury of the offense of aggravated sexual assault[1] and sentenced to thirty years confinement.  By four issues, Appellant contests:  (1) the legal and factual sufficiency of the evidence, (2) whether he was denied

---

[1]Tex. Penal Code Ann. § 22.01(a)(1)(B), (2)(B) (Vernon Supp. 2008).

effective assistance of counsel because his counsel failed to object to admission of a hearsay statement by the child victim, (3) whether he was denied effective assistance of counsel because his counsel failed to object to extraneous offense evidence, and (4) whether the cumulative errors by his counsel resulted in ineffective assistance of counsel. We affirm.

## Background

The indictment in this cause alleged that on or about January 2, 2004, in Terry County, Texas, Appellant intentionally and knowingly caused the penetration of the sexual organ of Amanda Simental (a pseudonym), a child who was then and there younger than fourteen years of age and not the spouse of Appellant, by Appellant's sexual organ.[2] Prior to trial, the State filed notice that it intended to offer evidence of other crimes, wrongs or acts against the victim in its case-in-chief at the guilt/innocence phase of the trial.[3]

At trial, Amanda's aunt testified that, in October 2007, Amanda told her that Appellant had previously raped her while her mother was working a night shift. According to Amanda, Appellant had crawled into her bed, pinned her down, and "stuck his penis inside her where her menstrual cycles come from." Amanda was ten years old at the time

---

[2]Tex. Penal Code Ann. § 22.021 (a)(1)(B)(I), (2)(B) (Vernon Supp. 2008).

[3]See Tex. Code Crim. Proc. Ann. art 38.37 §§ 1(1), 2(2), 3 (Vernon Supp. 2008).

2

of the assault. Amanda's aunt contacted the Terry County Sheriff's office and an investigation was launched that ultimately led to Appellant's arrest.

Amanda's mother testified she and Appellant lived together from 2002 to 2006. In 2004, her daughter complained of physical abuse by Appellant to school officials and later Child Protective Services. Although she believed her daughters complaints were justified, she was frightened to come forward because, at that time, she was still living with Appellant. She further testified that it was not until October of 2007 that she first learned of Appellant's sexual abuse of her daughter.

Amanda testified that she was at her grandmother's house, with her brother and sister, when the subject of conversation turned to how Appellant had abused them. At that time, Amanda took her aunt aside and told her that Appellant raped her. By rape, Amanda testified that she meant he "touched her in the wrong way" or "in my middle" when she was ten years old. She then testified as follows:

> STATE: Okay. And tell the jury, you have to tell them, okay, what you mean "the middle part" what do you mean?
>
> AMANDA: I don't know how to put it.
>
> STATE: Tell us in your words?
>
> AMANDA: Your private part.
>
> STATE: Is that the part of your part where you go to the bathroom and pee?
>
> AMANDA: Yes, sir.

3

STATE:     Okay.  And did he put his private part inside your private part?

AMANDA:     Yes, sir.

STATE:     What did it feel like?

AMANDA:    It hurt.

STATE:     Did you tell him to stop?

AMANDA:    Yes, sir.

STATE:     Did he stop?

AMANDA:    No.

Amanda also testified Appellant physically abused her, her brother, and her sister by hitting them with a cable and making them stand on the wall until they fainted.  She testified that, when she told her mother of the physical abuse, her mother acted as though she did not believe Amanda.  She indicated she had complained to school officials and CPS of the physical abuse but later recanted because she was afraid she would be taken away from her mother.  She did not tell her mother about the sexual assault because Appellant threatened to hurt her and kill her mother.  She also believed that, if she told her mother, she would again not believe her.  She testified Appellant raped her on more than one occasion.

Patricia Salazar, a registered nurse and sexual assault nurse examiner, testified she examined Amanda in October 2007.  She testified that, during the examination, she noticed a scar on Amanda's genitalia that evidenced a penetrating injury or actual tear

4

caused by trauma to her private part. She also testified that, although the injury could have occurred six weeks or three years ago, the penetrating injury was consistent with Amanda's history of sexual assault.

Amy Martinez Cruz, an investigator for the Department of Family and Protective Services, testified she first met Amanda in February 2006 when she received a complaint that Amanda had been physically abused by her mother. There was no mention of sexual abuse. She investigated the complaint and it was ruled out–case closed. Her next involvement was in August 2006 when she received a report that Amanda was being physically abused by her mother and Appellant was inappropriately touching Amanda. During her first interview, Amanda was in the seventh grade at school. She told Cruz that Appellant had been sexually abusing her since the third grade. In a subsequent interview, Amanda indicated she made up the story about Appellant being sexually inappropriate with her because she was mad at her mom.

When Cruz interviewed Amanda's sister, she told Cruz that Amanda said things because she was mad at their mother and knew CPS would intervene. Her sister also indicated Amanda liked to instigate stuff and talk back. She also told Cruz that Appellant was nice and did things for them like their own father. Amanda's mother told Cruz that she was convinced Amanda's statements were false. Because Amanda recanted, the case was ultimately closed.

5

A year later, in October 2007, Cruz again investigated allegations by Amanda that Appellant had sexually abused her. Amanda told Cruz that Appellant took advantage of her many times. Amanda referred to her private part as her "middle" and called Appellant's private part "his thing." On completion of her investigation, Cruz determined there was "reason to believe that sexual abuse of [Amanda] did occur by [Appellant]."

Amanda's sister testified that, during the period Appellant lived in their house, she and her siblings lied to protect their own safety because Appellant had threatened to harm or kill them. She also corroborated Amanda's testimony related to physical abuse of the children by Appellant.

Thereafter, the jury found Appellant guilty of the offense of sexual assault as charged in the indictment. On September 30, 2008, Appellant filed a motion for a new trial asserting the verdict was contrary to the evidence. The trial court denied Appellant's motion and this appeal followed.

**Discussion**

Appellant asserts the evidence is legally and factually insufficient to support his conviction because the State failed to prove Amanda was speaking of her sexual organ when she referred to her "middle" and there is no independent medical evidence Appellant penetrated Amanda's sexual organ with his sexual organ. He next asserts his counsel was ineffective because his counsel did not object to testimony by Amanda's aunt relating

6

Amanda's outcry statement when the statement did not meet the statutory requirement that the testimony be from the first person to whom the child makes a statement about the offense.[4] He also contends his counsel was ineffective because his counsel did not object to extraneous offense testimony regarding physical abuse and threats. Finally, Appellant asserts that, if one of his counsel's errors is insufficient to establish he was ineffective, the cumulative effect of both errors severely prejudiced Appellant establishing his counsel was ineffective.

## I.      Sufficiency of the Evidence

When both the legal sufficiency and factual sufficiency of the evidence are challenged, we must first determine whether the evidence is legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

### A.      Legal Sufficiency

#### 1.      Standard of Review

It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element

---

[4]Article 38.072 permits the admission of a statement made by a child, twelve years of age or younger describing the alleged commission of an offense under Chapter 21 of the Penal Code, despite the hearsay rule, if, among other qualifications, the hearsay statement was made "to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." Tex. Code Crim. Proc. Ann. art. 38.072 § 2 (a)(2) (Vernon 2005).

of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2008). Tex. Penal Code Ann. § 2.01 (Vernon 2003). Evidence is legally insufficient if, when viewed in a light most favorable to the prosecution, a rational trier of fact could not have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex.Crim.App. 2009).

The standard is the same in both direct and circumstantial evidence cases. *Laster,* 275 S.W.3d at 517-18. In measuring the legal sufficiency of the evidence to sustain a conviction, we measure the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct jury charge is a charge that accurately promulgates the law, is authorized by the indictment, does not necessarily increase the State's burden of proof or restrict the State's theory of criminal responsibility, and adequately describes the particular offense. *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex.Crim.App. 2008).

In measuring legal sufficiency, an appellate court must consider all the evidence that was before the jury–whether proper or improper–so that we can make an assessment from the jury's perspective. *Miles v. State*, 918 S.W.2d 511, 512 (Tex.Crim.App. 1996). As an appellate court, we sit as a final due process safeguard, ensuring only the rationality of the fact finder, and we must uphold the jury's verdict unless it is found to be irrational or unsupported by more than a "mere modicum" of evidence. *Moreno v. State*, 755 S.W.2d

8

866, 867 (Tex.Crim.App. 1988). Our role is restricted to guarding against the rare occurrence when a fact finder does not act rationally. *Laster*, 275 S.W.3d at 517.

## 2. Analysis – Aggravated Sexual Assault

Per the indictment, Appellant committed the offense of aggravated sexual assault if he (1) intentionally or knowingly (2) caused the penetration of the sexual organ (3) of a child (4) by any means and (5) the child was younger than fourteen years of age. Tex. Penal Code § 22.021 (a)(1)(B)(i), (2)(B) (Vernon Supp. 2008).

In aggravated sexual assault cases, where the victim is 17 years of age or younger, the uncorroborated testimony of the victim alone is sufficient to support a conviction. Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (Vernon 2005). *See Empty v. State*, 972 S.W.2d 194, 196 (Tex.App.–Dallas 1998, pet. ref'd); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex.App.–Dallas 1994, no pet.). The child may testify using language appropriate for his/her age to describe the sexual assault because "one cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults." *Villalon v. State*, 791 S.W.2d 130, 134 (Tex.Crim.App. 1990). Furthermore, a child victim's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault. *Kimberlin v. State*, 877 S.W.2d 828, 831 (Tex.App.–Fort Worth 1994, pet. ref'd) (citing *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App. 1991).

9

Appellant contends the evidence is insufficient because the State failed to prove there was penetration of a sexual organ either by direct or circumstantial evidence. Appellant asserts Amanda never described what she meant by her testimony that Appellant "touch[ed] her middle" and there was no independent medical evidence, either direct or circumstantial, to establish that Appellant penetrated the victim's sexual organ with his sexual organ.

"Penetration may be proven by circumstantial evidence;" *Nilsson* v. State, 477 S.W.2d 592, 595 (Tex.Crim.App. 1972), and there is no requirement that the victim be able to testify as to penetration. *Villalon*, 791 S.W.2d at 133; *Nilsson*, 477 S.W.2d at 596. See *Mosley v. State*, 141 S.W.3d 816, 823 (Tex.App.–Texarkana 2004, pet. ref'd). Neither is medical evidence necessary to prove penetration. *Villalon*, 791 S.W.2d at 133.

Relying on these principles, we find the evidence sufficient to establish penetration. Amanda testified Appellant touched her "in the wrong way" or "in my middle." She explained that by "the middle part," she meant her "private part," and agreed with the prosecutor that you go to the bathroom and pee with your "private part." She then agreed with the prosecutor that Appellant put his private part in her private part and "[i]t hurt." Amanda's aunt testified that, during her outcry, Amanda told her Appellant raped her, pinned her down, and "stuck his penis inside her where her menstrual cycles come from." Finally, Salazar, the sexual assault nurse examiner that examined Amanda, testified that Amanda's genitalia showed scarring which evidenced a penetrating injury or actual tear

10

caused by trauma to her private part. She further testified that, although the scarring was not conclusive evidence of sexual assault, the penetrating injury was consistent with Amanda's history of sexual assault.

The totality of the evidence, here, was sufficient for a rational trier of fact to have believed that the element of penetration of the child victim's sexual organ was established beyond a reasonable doubt. 791 S.W.2d at 133-34. *See Mosley*, 141 S.W.3d at 823.

**B.     Factual Sufficiency**

### 1.     Standard of Review

When conducting a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007), *cert. denied*, 128 S.Ct. 282, 169 L.Ed.2d 206, 76 U.S.L.W. 3165 (2007); *Watson v. State*, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). We give deference to the fact finder's determination when supported by the record, and cannot reverse a conviction unless we find some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the verdict. *Watson*, 204 S.W.3d at 417. The criminal verdict will be set aside "only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence so strong that the standard of proof beyond a reasonable doubt could not have been met." *Gaza v. State*, 213 S.W.3d 338,

343 (Tex.Crim.App. 2007). In addition, the fact finder is entitled to judge the credibility of the witnesses and may choose to believe all, or some or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).

### 2. Analysis – Aggravated Sexual Assault

Appellant contends the evidence is factually insufficient because Salazar could not testify with certainty that Amanda's penetration injury was caused by a male sexual organ or more precisely determine when the injury occurred. Nevertheless, Salazar did testify a male sexual organ could have caused the injury and the penetration injury was consistent with Amanda's history of sexual abuse.

Our evaluation of the evidence "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of testimony" such as Salazar's. *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App. 1996), *cert. denied*, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). To the extent Appellant claims the evidence is factually insufficient because Salazar's opinions were less than certain, we hold that the evidence in support of the jury's verdict was not so weak as to render the verdict clearly wrong or manifestly unjust. Appellant's first issue is overruled.

### II. Ineffective Assistance of Counsel

Appellant's second and third issues assert he was denied ineffective assistance of counsel. His fourth issue asserts that the cumulative effect of the errors asserted in issues

two and three severely prejudiced him and, for this reason, he was denied effective assistance of counsel.  For convenience, we will consider these issues together.

### A.    Standard of Review

We examine ineffective assistance of counsel claims by the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by Texas in *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex.Crim.App. 1986). Appellant has the burden to show by a preponderance of evidence (1) trial counsel's performance was deficient in that it fell below the prevailing professional norms, and (2) the deficiency prejudiced the defendant; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different.  *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999).  We examine the totality of counsel's representation to determine whether Appellant received effective assistance but do not judge counsel's strategic decisions in hindsight.  *Id.* at 813.  Rather, counsel's conduct is viewed with great deference.  *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App. 2005).  Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  *Thompson*, 9 S.W.3d at 812.

In the usual case in which an ineffective assistance claim is made, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that

counsel's conduct was reasonable and professional." *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). This is generally the case because a silent record provides no explanation for counsel's actions and therefore will not overcome the strong presumption of reasonable assistance. *Freeman v. State,* 125 S.W.3d 505, 506 (Tex.Crim.App. 2003); *Rylander v. State,* 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003).[5]

### B.    Outcry Statement – Issue Two

Appellant first asserts counsel was ineffective because he failed to object to testimony of Amanda's outcry statement by her aunt. Appellant contends that an objection was proper because her aunt was not the first person to whom Amanda made an outcry statement. Appellant contends Amanda made her first outcry statement to her mother, Diana.

Article 38.072 of the Code of Criminal Procedure permits outcry statements by victims of child abuse to be admitted during trial, despite the hearsay rule, if the statement was made by the child against whom the offense was allegedly committed and the statement was made to the *first* person to whom the child made the statement about the

---

[5]This case demonstrates the "inadequacies inherent in evaluating ineffective assistance claims on direct appeal." *Patterson v. State*, 46 S.W.3d 294, 306 (Tex.App.–Fort Worth 2001, pet. ref'd). Like *Patterson*, Appellant's motion for new trial did not claim ineffective assistance of counsel, the trial court did not hold a hearing to determine whether Appellant's complaints of ineffective assistance involved actions that may or may not have been grounded in sound trial strategy, and the record does not reflect counsel's reasons for doing or failing to do the things of which Appellant complains.

offense.  See Tex. Code Crim. Proc. Ann. art. 38.072 § 1 (1), § 2 (1) & (2) (Vernon 2005).

To qualify as proper outcry statements, the child must have described the alleged offense

in some discernible way and must have more than generally insinuated that sexual abuse

occurred.  *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim.App. 1990).  *See Sims v. State*,

12 S.W.3d 499, 500 (Tex.App.–Dallas 1999, pet. ref'd); *Hayden v. State*, 928 S.W.2d 229,

231 (Tex.App.–Houston [14th Dist.] 1996, pet. ref'd).

The *Sims* court held the trial court did not abuse its discretion by holding a Family

Services employee, and not a child victim's mother, was the proper outcry witness.  12

S.W.3d at 500.  The appellant in *Sims* contended the mother should have been the proper

outcry witness because the child initially told her mother that appellant "had touched her

private parts."  *Id.*  Subsequent to the statement made to the mother, the child made a

statement to a Family Services employee that provided specific details establishing the

elements of the charged offense (indecency with a child).  *Id.*  Because the record failed

to show that the child provided a clear description of the charged offense to her mother,

as required by article 38.072, the *Sims* court held that it was reasonable for the trial court

to determine the statement made by the child to the Family Services employee met the

requirements of article 38.072.  *Id.*

Here, as in *Sims*, the record establishes that Amanda made a statement to her aunt

that provided specific details establishing the elements of the charged offense.  The record

also establishes that any outcry statement made by Amanda to her mother was related to

15

physical abuse or, at most, inappropriate touching of a sexual nature.  Thus, under *Sims*,

an objection to Amanda's aunt's testimony was not in order.  The law as applied to the

facts of this case indicate that the performance of Appellant's counsel was not deficient

and did not fall below prevailing professional norms.  Appellant's second issue fails to

satisfy the first element of an ineffective counsel claim and is overruled.

## C.    Extraneous Offenses  - Issue Three

Appellant next complains that his counsel was ineffective because he did not object

to the State's evidence of extraneous offenses.  Specifically, Appellant contends witnesses'

testimony that he physically abused the children and threatened them was inadmissible

under Rule 404(b) of the Rules of Evidence and a proper objection would have resulted

in the testimony being excluded.

Here, not only did the State solicit testimony as to these extraneous offenses but

Appellant's counsel also solicited such testimony in his direct examination of witnesses in

order to impeach their credibility and emphasize inconsistencies in their prior statements.

Here, the record is silent as to whether trial counsel's failure to object to the extraneous

offenses was a matter of trial strategy, and if so, whether the strategy was sound.  Failure

to make the required showing of deficient performance defeats Appellant's ineffectiveness

claim.  *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999).  Moreover, where

counsel not only fails to object but elicits the very testimony Appellant finds objectionable,

"[w]e decline to hold that such actions which waive evidentiary grounds may automatically

16

be transformed into grounds for relief for ineffective assistance of counsel." *Ex parte Ewing*, 570 S.W.2d 941, 948 (Tex.Crim.App. 1978). Appellant's third issue is overruled. Because we have overruled issues two and three, Appellant's fourth issue regarding cumulative error is pretermitted

.                                        **Conclusion**

                    The trial court's judgment is affirmed.



                                        Patrick A. Pirtle
                                        Justice

Do not publish.