COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JORGE BARRAGAN, | § | No. 08-23-00189-CR |
| Appellant, | § | Appeal from the |
| v. | § | 34th Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20230D02936) |

## MEMORANDUM OPINION

A jury convicted Appellant Jorge Barragan of one count of indecency with a child by sexual contact and one count of aggravated sexual assault of a child. The trial court sentenced him to five years' imprisonment on each of the two counts, with the sentences to be served consecutively. Barragan raises three issues on appeal: (1) the evidence is legally insufficient to support his conviction for aggravated sexual assault of a child, (2) the trial court abused its discretion by incorrectly designating the outcry witness under Tex. Code Crim. Proc. Ann. art. 38.072, and (3) the trial court erred in denying his motion for mistrial concerning evidence of an extraneous offense. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.J.F. is the complaining witness of the case. [1] At the time of trial, she was fourteen years old. After Barragan married A.J.F.'s mother in 2016, A.J.F. lived with her mother, Barragan, and two of her sisters.

A.J.F. testified that she would often be alone with Barragan because she was released from school earlier than her sisters and her mother remained at work. A.J.F. testified she was eight years old when Barragan started touching her. She remembered the first time it happened was when she was asleep in the living room. She felt someone touching her and saw Barragan touching her "private parts." A.J.F. recalled another similar occasion when she was on the sofa again and Barragan did the same thing. A.J.F. also described another occasion she recalled where she was on her sister's bed while not wearing clothes. Barragan distracted her with a video about riddles. She noticed he made movements with a part of his body, on her unclothed butt, while he remained behind her. When asked whether she meant that he placed his genitals on top of her, A.J.F. answered "Yes." She also affirmed that he was "pushing." After he finished, he said: "I'm sorry. I won't do it again." She explained this happened a second time, once again on her sister's bed. A.J.F. also described another occasion where Barragan had her sit on his lap while facing him. Both of them wore clothing. He then grabbed her legs, moving them "left to right," while moving his hips. When asked whether she felt his genitals, she answered that she could not remember. When asked how she felt, she answered, "I felt weird." A.J.F. also testified there were occasions where Barragan would clean her private parts after she wet her bed. Barragan promised he would

---

[1] To protect the privacy of minor witnesses, we refer to them by their initials only. Tex. R. App. P. 9.10.

take her to the zoo if she let him clean her. Throughout her testimony, A.J.F. used anatomically correct dolls to assist her in demonstrating Barragan's actions.

A.J.F.'s mother testified she first learned of what Barragan was doing to A.J.F. after her other daughter, G.J.F., reported an incident to her. A.J.F.'s mother then asked A.J.F. if anything had happened to her. A.J.F.'s mother described that A.J.F initially denied anything had occurred. Although A.J.F. initially appeared scared, she eventually disclosed that Barragan had done to her "what adults do." A.J.F. did not explain with any other detail as she and her mother were interrupted by Barragan saying they had to leave for Juarez. Before leaving with Barragan, A.J.F's mother called her own mother to tell her what A.J.F. had said to her.

A.J.F.'s aunt then went over to A.J.F.'s house while her mother and Barragan were in Juarez. A.J.F.'s aunt testified she went over because she had heard that A.J.F.'s mother found Barragan on top of G.J.F. A.J.F.'s aunt had suspicions about Barragan sexually molesting G.J.F. and asked A.J.F. if she knew anything. A.J.F. denied that she knew anything, claiming she had been taken out of the room. A.J.F.'s aunt then changed her question and asked if Barragan had ever done anything to her. A.J.F. answered yes. She told her aunt that Barragan would "open her legs up to her waist and lift them and that he would make movements towards him." A.J.F.'s aunt described that A.J.F. made movements with her hands to demonstrate. Using A.J.F.'s words, A.J.F.'s aunt asked her whether Barragan had penetrated her. A.J.F. responded "yes," and she added that Barragan "would do with her what adults do." The aunt described that A.J.F. appeared nervous and afraid during their conversation. After the conversation ended, A.J.F.'s aunt called 911 and reported what A.J.F. had said to her.

Detective Paul Mata with the El Paso Police Department testified that he interviewed both A.J.F. and G.J.F. After interviewing G.J.F., he determined he lacked enough information to meet

3

the elements of a criminal offense. When he spoke with A.J.F., however, he determined she had begun to give details of abuse. At that point, he stopped the interview, and transported her and her family to the child advocacy center with Barragan remaining at their residence. At the center, A.J.F. fell asleep on a couch after complaining of being tired. While she slept, Detective Mata obtained a written statement from A.J.F.'s aunt. He also interviewed her mother and other members of the family during the course of his investigation. Eventually, A.J.F. gave a recorded interview at the center.

As a part of his defense, Barragan cross-examined Detective Mata about A.J.F. changing details over the several years between investigation and trial. Barragan also presented the testimony of several witnesses including his niece, his brother, and a church friend who all testified he was a kind man. Additionally, he also recalled A.J.F.'s mother to the stand to introduce photographs of the family where the children appear happy while they are with Barragan.

The jury found Barragan guilty of indecency with a child by sexual contact and aggravated sexual assault of a child. After the punishment phase, the jury assessed punishment at five years imprisonment for each charge. The trial court entered judgment in accordance with the jury's verdict with the sentences running consecutively.

## SUFFICIENCY OF THE EVIDENCE

In Barragan's first issue, he contends the evidence was legally insufficient to support his conviction for aggravated sexual assault of a child. Specifically, Barragan claims that A.J.F. "only ever answered, unequivocally, 'No,' when asked about penetration."

### A. Standard of review

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both State and defense, in the light most favorable to the verdict to

4

determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We may not re-weigh evidence or substitute our judgment for that of the fact-finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We may not resolve any conflict of fact or assign credibility to the witnesses. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992) (en banc). We presume that the jury resolved any conflicting inferences from the evidence in favor of the verdict, and we do not substitute our judgment for that of the jury because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to their testimony. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

## B. Applicable law

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the female sexual organ by any means, and the victim is younger than 14 years of age. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B), (a)(2)(B).

The Penal Code does not define the term "penetration." As a result, "[w]ords not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may . . . freely read statutory language to have any meaning which is acceptable in common parlance." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (en banc). In the context of a charge of aggravated sexual assault, the Texas Court of Criminal Appeals has established that "penetrate" means "to enter into" or "to pass through." *Id*. More specifically, a penetration occurs in this context where the contact is more intrusive than contact with the outer vaginal lips or labia majora of the female body. *Id*. And, the Court further explained that the slightest penetration of the female sexual organ is sufficient to prove penetration even though the vagina is not entered. *Id*.; *Sherbert*

*v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976); *Nilsson v. State*, 477 S.W.2d 592, 595 (Tex. Crim. App. 1972).

### C. Analysis

Barragan argues the evidence was insufficient to convict him of aggravated sexual assault of a child. Barragan points to A.J.F.'s testimony where she answered "no" when asked whether Barragan's penis ever "entered [her] body." Also, A.J.F. answered "no" when she was asked whether Barragan ever "used his finger to penetrate [her]." From this testimony, Barragan asserts there is "no credible evidence" that he penetrated the sexual organ of A.J.F. as charged by the indictment. Barragan also asserts that because the State used the word "penetration" when questioning A.J.F., her testimony is unclear to the extent of whether she understood the full meaning of the word used.

"[W]hen determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally entitled to use." *Vernon*, 841 S.W.2d at 409. The Court of Criminal Appeals has held evidence to be sufficient when the complaining witness testified the defendant only touched the "outside" of her vagina and did not feel anything "inside." *Id.* at 408. There, the complaining witness also stated she felt pain and discomfort, even though she could not describe where she felt the pain. *Id.* at 409. In determining the meaning of the word "penetrate," the Court noted:

> [P]ushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact. Consequently, it is not ungrammatical to describe Appellant's touching of complainant in this case as a penetration, so long as contact with the injured part of her anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips.

6

*Id.* Based on this meaning, the Court held the testimony was sufficient. *Id.*

Here, A.J.F. testified to the different occasions where Barragan would touch her "private parts." She further explained that Barragan would touch the "front part" of her body, confirming the area as from where she "pee[d]." When asked to show the jury what he was doing either with her hand or however she could, she answered: "[w]ith his hand he was going like this, but he was going fast." A.J.F. acknowledged that this touching of her body hurt her and scared her. Explaining further, A.J.F. testified: "[b]ecause he was doing it fast, and that's when I started hurting a lot." She also explained that Barragan would "clean her" when she wet the bed.

At trial, although A.J.F. answered "no" when asked whether penetration occurred, her aunt testified that she had spoken with different words when she was first asked about the touching. A.J.F.'s aunt testified she used A.J.F.'s own words to ask her whether Barragan had penetrated her and A.J.F. confirmed that he did. Additionally, A.J.F. demonstrated with her hands when she spoke to the jury about Barragan's actions. She also used anatomically correct dolls to demonstrate what she meant. We must presume that the undescribed acts included in the record support the jury's findings, as the jury is the trier of fact and determines credibility. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc) (finding evidence sufficient when child used anatomically correct dolls to demonstrate what she meant by "this"); *Gaona v. State*, 733 S.W.2d 611, 613 n.1 (Tex. App.—Corpus Christi–Edinburg 1987, pet. ref'd) (finding "descriptions such as 'like that' or 'like this' may have a significant impact on the jury's consideration of the mental state accompanying a particular act").

Barragan points out that, in *Vernon*, the jury heard expert testimony describing the anatomical parts of female genitalia. See *Vernon*, 841 S.W.2d at 409. Because no such expert testified here, he argues the evidence presented by the State was insufficient to support the

elements of the charged offense. We disagree. Expert testimony is not needed when the complaining witness's testimony is sufficient to support a conviction for indecency with a child or aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07; *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005).

Barragan also urges that A.J.F.'s aunt's testimony that A.J.F. had described that Barragan had penetrated her was not credible given it contradicted the child's in-court testimony. Based on our standard of review, this argument also fails on its merits. On review, we must presume that the jury resolved any conflicting inferences from the evidence in favor of the verdict, and we do not substitute our judgment for that of the jury because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to their testimony. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

In sum, A.J.F.'s testimony was not insufficient simply because she did not use precise terminology when she described how and where Barragan touched her. *Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977) (recognizing that children often lack the technical knowledge to describe human anatomy and that a child's use of unsophisticated language to describe sexual organs does not render the evidence insufficient to support a conviction for sexual offenses). We conclude the totality of the circumstances allowed a rational jury to conclude beyond a reasonable doubt that Barragan committed the offense of aggravated sexual assault of a child. *See Vernon*, 841 S.W.2d at 409.

Accordingly, we overrule Barragan's first issue.

## OUTCRY WITNESS

In his second issue, Barragan asserts A.J.F.'s aunt was not a proper outcry witness. Barragan asserts that A.J.F.'s mother qualified instead.

8

## A.  Standard of review and applicable law

We review for an abuse of discretion a trial court's determination of whether an outcry statement is admissible under Article 38.072 of the Texas Code of Criminal Procedure. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990) (en banc). "A trial court only abuses its discretion in admitting outcry testimony if its decision falls outside the zone of reasonable disagreement." *Waldrep v. State*, No. 08-19-00027-CR, 2019 WL 6888522, at *3 (Tex. App.—El Paso Dec. 17, 2019, no pet.).

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011) (citing Tex. R. Evid. 801(d)). Hearsay is inadmissible unless it falls under an exception in Texas Rules of Evidence 803 or 804, or it is allowed by "other rules prescribed pursuant to statutory authority." *Id.* (citing Tex. R. Evid. 802). One of the "other rules" is found in Article 38.072 of the Texas Code of Criminal Procedure, which allows for the admission of certain out-of-court "outcry" statements. *Id.* Relevant here, that article applies to statements that (1) describe the alleged offense, (2) were made by a child victim who is younger than 14 years old, and (3) are implicated in cases where the defendant is charged with certain enumerated offenses. Tex. Code Crim. Proc. Ann. art. 38.072, §§ 1, 2(a)(1)(A), 2(a)(2). Further, Article 38.072 specifically provides that the statement must be one made to the first person, 18 years old or older, other than the defendant, to whom the child made a statement about the offense. *Id.* art. 38.072, § 2(a), (3). Procedurally, the State cannot introduce the statement until the trial court holds a hearing outside the presence of the jury to determine whether the statement is "reliable based on the time, content, and circumstances of the statement." *Id.* art. 38.072, § 2(b)(2). In addition, the child must testify or be available to testify at the trial. *Id.* art. 38.072, 2(b)(3). "Outcry testimony admitted in compliance with Article 38.072 is

9

considered substantive evidence that is admissible for the truth of the matter asserted in the testimony." *Kappes v. State*, No. 08-22-00095-CR, 2023 WL 1972015, at *4 (Tex. App.—El Paso Feb. 13, 2023, pet. ref'd).

Article 38.072's specificity requirement has been construed to mean that an outcry statement must be "more than words which give a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91. Put another way, the specificity requirement is generally met when a victim sufficiently describes the "how, when, and where" of the abuse. *Rivera v. State*, No. 08-19-00136-CR, 2021 WL 3129261, at *4 (Tex. App.—El Paso July 23, 2021, no pet.) (not designated for publication).

### B. Analysis

At the start of trial, before the jury entered, the trial court held an outcry witness hearing. Both A.J.F.'s mother and her aunt testified as possible outcry witnesses. First, A.J.F.'s mother testified that A.J.F. had told her that "something was happening." Her mother remembered talking to a police officer the next day but did not remember telling him that A.J.F. had denied, multiple times, that Barragan had done anything to her. When asked to describe what A.J.F. told her about the sexual assault, A.J.F.'s mother responded that the conversation was only about five minutes long because Barragan interrupted, and she did not get any details. A.J.F.'s mother remembered telling the police officer that A.J.F. had said that Barragan "did what adults do." When she asked her to clarify, A.J.F. merely said, "well, you know." A.J.F.'s mother did not remember telling the officer that she asked A.J.F. whether Barragan took off her clothes. A.J.F.'s mother did ask A.J.F. whether Barragan touched any part of her body and A.J.F. responded "yes." She then called her own mother. She believed it was possible that A.J.F. had been sexually assaulted.

10

Second, A.J.F's aunt testified she went over to speak to her because she had learned that Barragan was "all over" her other niece. When she arrived, A.J.F. was outside standing on a sidewalk. The aunt asked her to sit with her inside her truck. A.J.F.'s aunt asked if A.J.F. knew what happened with her other niece and A.J.F. said "no." The aunt then asked A.J.F. if Barragan did anything to her and she said "yes." When using A.J.F.'s "exact words," her aunt testified that A.J.F. said that Barragan "had opened her legs and that . . . he had put them up against her waist and that he was pushing her towards him." Based on the hand movements made by A.J.F., the aunt asked whether Barragan had penetrated her. A.J.F. said "yes" and said he did "adult things" with her. A.J.F. also said she would tell Barragan to stop. Barragan would say "no," and to "just let it happen and not tell her mom." A.J.F. said this would happen when she was alone with Barragan. A.J.F. also told her aunt that it would happen in her room and in Barragan's room. The aunt testified the entire conversation lasted about 30 minutes. She called the police after her conversation with A.J.F. had ended.

Barragan asserts A.J.F.'s statements to her mother were more than general allegations of abuse. He claims the only difference being that her statement to her aunt was "more graphic." The State counters that A.J.F.'s statements to her mother—that Barragan lifted her legs and did "what adults do"—did not constitute a description of the charged offenses. *See* Tex. Code Crim. Pro. Ann. art. 38.072 § 2(a). For this reason, the State contends the trial court correctly determined that A.J.F.'s statements to her mother were only general insinuations, not specific descriptions of unlawful conduct. We agree. Here, A.J.F.'s statements to her mother were brief and unspecific, providing only a general allusion to contact with Barragan. By contrast, A.J.F. used more specific words when speaking to her aunt, which qualified the description as an outcry statement. *Garcia*, 792 S.W.2d at 91; *see also Gutierrez v. State*, No. 05-17-00772-CR, 2018 WL 2001614, at \*5

11

(Tex. App.—Dallas Apr. 30, 2018, no pet.) (mem. op., not designated for publication) (holding the trial court could have reasonably concluded that child's statements to daycare owner "generally . . . what was going on," that she might be pregnant, and who did these things to her, but did not provide details were nothing more than a general allusion that sexual abuse was occurring and did not qualify the daycare owner as the outcry witness).

The record sufficiently shows that, although A.J.F. first told her mother about the general existence of physical contact, it was her aunt who qualified as the first adult to whom A.J.F. described the details of sexual abuse. These details included the specific acts committed by Barragan including the act of penetration. For these reasons, we conclude that the trial court's designation of A.J.F.'s aunt as the proper outcry witness was not outside the zone of reasonable disagreement. *See Kappes*, 2023 WL 1972015, at *5 (finding nurse was proper outcry witness as she was the first to get details about the abuse when child only told mother that appellant was "hurting her," mother confirmed the existence of abuse but did not give details about the abuse).

Accordingly, we overrule Barragan's second issue.

## MISTRIAL

In his third and final issue, Barragan asserts the trial court erred in denying his motion for a mistrial.

### A. Standard of review and applicable law

We review for an abuse of discretion the trial court's denial of a motion for mistrial. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). If the trial court's ruling is within the zone of reasonable disagreement, it must be upheld. *Id.*

A mistrial is required only in extreme circumstances where the prejudice is incurable. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc). Prejudice is incurable

when the objectionable material is clearly calculated to inflame the minds of the jury or was of such a damaging character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). An instruction to disregard ordinarily renders harmless challenged testimony referring to or implying extraneous offenses. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992).

## B. Analysis

Barragan's complaint on appeal is that the State provided notice of a "Class C Misdemeanor." Yet, he claims, when G.J.F. testified, she detailed a more damaging offense. The State's notice provided:

> On or about 10/31/2018, in El Paso County, [Barragan] got on top of G.J.F. and began touching her in a sexual manner and tried to touch her breast. The Defendant was aware G.J.F. was 15 years old at the time. For further detail see 20190D00053l.

At trial, G.J.F. testified she was angry with her mother because of a disagreement. She was alone in her room, laying on her bed. Barragan came into the room. He started talking to her seeming to offer support. At first he was standing. Then he sat next to her. It was only talking at first. But it got uncomfortable when he started massaging her back. She described that he tried to remove her sweater, but she would not let him. She told him, "No, no." At that point, he got on top of her. She said he was "pushing." She was very uncomfortable and started crying. He told her, "You're okay. I love you." She told him she felt uncomfortable. He responded by saying, "Give me two more minutes." She told him, "No." Before he got up, she felt "something like kind of wet." She did not know what that meant until now. As he left, she was crying. Barragan asserts the State violated Article 38.37 and his due process rights by not providing adequate notice of G.J.F.'s testimony.

Other than a bare allegation, Barragan's brief does not include any pertinent law or analysis of the issue. *See* Tex. R. App. P. 38.1(i) (requiring that a brief must contain a clear and concise

argument for the contentions made with appropriate citations to authorities and to the record). Even so, we conclude the State provided adequate notice of the extraneous offense. The plain language of the statute does not require the State to describe all details, and Barragan has pointed to no authority indicating otherwise. *See* Tex. Code Crim. Pro. Ann. art. 38.37 § 3. Moreover, Article 38.37 does not limit the admission of details regarding an extraneous offense. *See id.* § 2(2)(b) (allowing for admission of evidence that defendant has committed separate sexual offense against child victim "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant"); *Robisheaux v. State*, 483 S.W.3d 205, 219 (Tex. App.—Austin 2016, pet. ref'd) (affirming admission of extraneous offense evidence under Article 38.37 when admitted evidence included previous victim's detailed testimony of sexual offenses committed against her by appellant). Accordingly, based on this record, Barragan fails to establish the trial court abused its discretion in failing to grant his motion for mistrial.

Accordingly, we overrule Barragan's third issue.

### TRIAL COURT'S CERTIFICATION OF APPELLANT'S RIGHT TO APPEAL

As a final matter, we address the absence of Barragan's signature on the required certification of his right to appeal this case. The trial court has certified Barragan's right to appeal this case, but the certification does not bear Barragan's signature as required by Tex. R. App. P. 25.2(d). Accordingly, pursuant to Rule 48.4 of the Texas Rules of Appellate Procedure, the Court ORDERS Barragan's attorney to send Barragan a copy of this opinion and this Court's judgment, to notify Barragan of his right to file a pro se petition for discretionary review and inform Barragan of the applicable deadlines. *See* Tex. R. App. P. 48.4, 68. The Court further ORDERS Barragan's attorney to comply with all of rule 48.4's requirements.

## CONCLUSION

Finding no error, we affirm.


GINA M. PALAFOX, Justice

July 23, 2024

Before Alley, C.J., Palafox, J., Rodriguez, C.J. (Ret.)
Rodriguez, C.J. (Ret.), (sitting by assignment)

(Do Not Publish)