# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00338-CR

---

**Gustavo Gonzalez, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2022-023B, THE HONORABLE TRACIE WRIGHT-RENEAU, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Gustavo Gonzalez, Jr. challenges his convictions for three counts of aggravated sexual assault of a child—for penetration of a child's anus with his sexual organ, penetration of a child's sexual organ with his sexual organ, and penetration of a child's sexual organ with his finger—and two counts of indecency with a child by contact. *See* Tex. Penal Code §§ 21.11(a)(1), 22.021(a)(2)(B). The victim in this case is his ex-girlfriend's then thirteen-year-old daughter, Jade.[1] In three issues, he contends that two of his convictions for aggravated sexual assault of a child are not supported by sufficient evidence and that the trial court erred by not including a definition for "penetration" in the charge and when it admitted into evidence a recorded police interview with Gonzalez. We will affirm the trial court's judgments of conviction.

---

[1] Because the victim in this case was a minor at the time of the charged offenses, we will refer to her by the pseudonym assigned to her by the investigating police detective to protect her privacy. *See* Tex. R. App. P. 9.10(a)(3).

## BACKGROUND

Sasha Gomez, a social worker and school counselor at Jade's middle school testified that she met Jade through her participation in the school's social services program. During the Fall 2021 semester, Jade would eat lunch with her friends and attend peer group sessions in Gomez's office. Gomez had been assisting Jade and her mother in finding a housing alternative because they were concerned that they might be kicked out of Gonzalez's home. In December 2021, Jade made an outcry to Gomez on a Monday morning. Jade told Gomez that Gonzalez had watched her and her siblings over the weekend while her mother was working. On Friday night, he attempted to kiss her. On Saturday, after he had been drinking at a sporting event, he brought Jade into a bedroom of the house, took her phone, and blocked her from leaving the room. He asked her multiple times if she would like to see him and her mother have sex. Jade told Gomez that she was very uncomfortable while that was happening. Jade told Gomez that Gonzalez took off her pants and rubbed his hand on her stomach. Gonzalez told Jade multiple times, "This isn't sex," but Jade told Gomez that she knew it was sex.

Gomez testified that Jade told her that when her mother got home from work later that day, she told her what happened. Mother told her that something similar had happened to her when she was young. Jade asked her mother if they were going to tell the police, and Mother said, "no." Jade asked her mother what would happen if she told Gomez. Her mother replied that she could not stop her from doing that. Her mother took Jade into the kitchen to talk with Gonzalez. Gonzalez began crying and told Jade that if she told anyone that he would be killed in jail, would not be able to dance with her at her quinceañera, and would not be there to see her siblings grow up. The next day, Mother and Gonzalez took Jade to Walmart to buy her snacks and offered to buy her a new phone if she did not tell anyone about what had happened.

2

Gomez testified that she immediately made a CPS report and contacted the police regarding Jade's outcry. Two representatives from the Comal Advocacy Center came to the school. Gomez testified that she called Mother to tell her that Jade needed to go to the hospital, but Mother replied that she was unable to get there due to transportation issues and gave Gomez permission to take Jade. Gomez took Jade to the hospital. Jade had a sexual assault nurse exam (SANE) done. Gomez testified that during the exam Jade was more comfortable communicating through writing and marking on pictures to explain what had happened.

Noella Hill testified that she is the nurse who examined Jade at the hospital. She testified that she collected biological evidence samples to be tested. Jade told Nurse Hill that her stepfather,[2] Gonzalez, had touched her. Jade told her that Gonzalez was 32 years old. When asked where he touched her, Jade asked Nurse Hill for something to write on. Nurse Hill testified that Jade wrote, "he touched me in my private and boobs and belly, and then he put his finger in my private and then put his private in my private."

Nurse Hill testified that Jade also told her that on the previous Friday, Gonzalez put her hand on his penis. Jade told Nurse Hill that Gonzalez told her not to tell anyone, or he would be killed in jail and promised to clean her room every day as a bribe. He then kissed her on the mouth and put his finger in her "private." Nurse Hill testified that Jade marked on a diagram where the female genital area is after being asked where his finger touched.

Nurse Hill testified about what Jade told her had happened on Saturday. Jade communicated to Nurse Hill that Gonzalez took off her pants and his private part touched her. Nurse Hill testified that when asked where his privates touched her, Jade drew a circle on a

---

[2] Although Gonzalez and Jade's mother were not married, Jade referred to him as her "stepdad" and the witnesses who had spoken with her about her outcry, referred to him as Jade's "stepfather."

diagram. Jade told Nurse Hill that while Gonzalez was touching her in the circled area, he told her, "It's not in," but she could feel a stretching that caused pain. She described the pain as a five out of ten. The diagram with both the marked area and the circled area was admitted into evidence:



Nurse Hill testified that Jade told her that when Mother got home on that Saturday, Gonzalez told Mother that he had touched and had sex with Jade and started crying and apologizing. Nurse Hill testified that Jade told her that on Sunday, Mother followed her on a walk and told her that something similar had happened to her when she was young.

The SANE report was admitted into evidence. In addition to the details that Nurse Hill testified to, the report stated that Jade was prescribed medication, including Plan B. Nurse Hill testified that Jade was given a pregnancy test—which was negative—and prescribed the Plan B pill to prevent pregnancy and antibiotics to prevent or treat sexually transmitted diseases. According to the SANE report, Jade's word for "anus" was "butt," and she called her "female genitalia," her "private."

4

Detective Richard Groff testified that he assisted with the investigation, including helping schedule Jade's SANE exam and forensic interview. He testified that the SANE exam was done first, and the forensic interview was scheduled for a different day. He testified that Gonzalez's mother (Grandmother) brought Jade to the forensic interview. Jade told the interviewer that she did not want to speak about the incident and walked out of the room. Detective Groff testified that he was concerned that this was influenced by Grandmother's presence.

Detective Groff testified that he interviewed Gonzalez about two weeks after Jade's outcry. He explained that Gonzalez was not under arrest when interviewed and had left after the interview. The video recording of Detective Groff's interview of Gonzalez was admitted into evidence over Gonzalez's relevancy objection.

Jade was sixteen years old when she testified. She testified that when she was in middle school, she lived with her stepdad (Gonzalez), Mother, and her two siblings. She testified that on a Friday, Gonzalez tried to kiss her, which made her uncomfortable and "have a feeling that something was going to happen" on Saturday. She testified that on Saturday, he started rubbing her stomach and talking about her menstrual cramps. He took her phone. He then "put his hand in [her] private part," under her underwear. She testified that she uses her "private part" to pee. Then he started "playing with [her] chest" by moving his hand in circles on it. He also "made [her] touch his penis" through his pants. Then he got on top of her, pulled down her pants, and "tried to stick it in [her] butt." She explained that "it" was his penis and her butt was the part of the body with poop. She said "it" felt hard and "she felt a little bit of pressure." He then stopped and they both went to the living room. He apologized to her and asked her, "Why [she] didn't tell him to stop." She told him that she was scared. Then he told

5

her that if she told anyone that he would not be able to dance with her at her quinceañera. She tried to leave the house to go to her grandparents' house but Gonzalez got in front of the door, pushed her, and blocked her path. He called Mother and told her to come home because "something happened." Jade testified that when her mother arrived home and asked what had happened, Gonzalez told Jade to tell Mother. Jade testified that she did not know what to say and replied to Gonzalez, "You tell her." Gonzalez then told Mother, "I touched her in the private and in the chest, and I kissed her." Mother and Jade cried together. Mother told Jade that she had told Gonzalez not to touch her. She and Mother went to bed in her sibling's room.

Jade testified that on Sunday, Gonzalez kept apologizing, asking her not to tell anyone, telling her he would be killed in jail and promised to buy her a new phone and clean her room if she did not tell anyone. Mother and Jade went on a walk and Mother told Jade about her own experience with sexual abuse as a child. Jade testified that Mother did not call the police. Jade testified that the next day she went to school, told her friends what had happened, and then told Ms. Gomez what Gonzalez had done. On cross-examination, Jade was asked how deep Gonzalez had inserted his penis into her butt. She testified, "I want to say it did not go in, but I did feel a little pressure."

The State called a series of witnesses who testified regarding the processing of the sexual assault kit collected by Nurse Hill. Cumulatively, they testified that no male DNA was found in the vaginal sample but that the sample taken from Jade's right breast was matched to Gonzalez.

The defense recalled Jade. The defense also called two character witnesses—Gonzalez's friend and his sister—who testified that they would still trust Gonzalez to watch their

6

children. Gonzalez's sister testified that he had been involved with another woman while with Jade's mother and that Mother was very upset by it.

After hearing all the evidence, the jury found Gonzalez guilty of all five counts, found the enhancement paragraphs true, and assessed punishment at eighteen-years', twenty-five years', and twenty-years' imprisonment for the three aggravated sexual assault offenses, and ten years' imprisonment for each indecency offense. *See id.* § 12.42(b), (c)(1). The trial court ordered all five sentences to run consecutively. Gonzalez appealed.

## SUFFICIENCY OF EVIDENCE

In his first issue on appeal, Gonzalez challenges the sufficiency of the evidence supporting two of his convictions—aggravated sexual assault of a child by penetration of the child's anus with his sexual organ and by penetration of the child's sexual organ by his sexual organ. Specifically, Gonzalez contends that the evidence is insufficient to establish that his penis penetrated, rather than touched, Jade's anus and sexual organ. For the reasons detailed below, we disagree.

The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge, which is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

7

*Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard requires the appellate court to defer 'to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). "We may not re-weigh the evidence or substitute our judgment for that of the factfinder." *Id.* (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). Although factfinders "may not speculate about the meaning of facts or evidence," they are permitted to "draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial." *Id.* (citing *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution." *Id.* (citing *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012)). This is because the factfinders are "the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony." *Id.* (citing *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)). "Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015)).

A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child under the age of fourteen by any means. Tex. Penal Code § 22.021(a)(1)(B)(i), (2)(B). "Evidence of the slightest penetration is sufficient." *Jessop v. State*, 368 S.W.3d 653, 664 (Tex. App.—Austin

2012, no pet.). "There is no requirement that the child victim testify about penetration." *Id.* (citing *Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990); *Nilsson v. State*, 477 S.W.2d 592, 596 (Tex. Crim. App. 1972)). This is because "we cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults." *Villalon*, 791 S.W.2d at 134.

The term "penetration" is not defined in the statute. *See* Tex. Penal Code § 22.021; *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). Statutorily undefined terms may be defined as typical and ordinary usage allows, and jurors may give them "any meaning which is acceptable in common parlance." *Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000). The Court of Criminal Appeals has explained that,

> In contexts like that of the Aggravated Sexual Assault statute, "penetrate" may mean "to enter into" or "to pass through." *See, e.g.*, Webster's Third New International Dictionary, p. 1670 (Merriam–Webster 1981). Thus, in common parlance, mere contact with the outside of an object does not amount to a penetration of it. But pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact.

*Vernon*, 841 S.W.2d at 409.

In support of his sufficiency challenge regarding the anal-penetration offense, Gonzalez emphasizes Jade's testimony that she "want[ed] to say it did not go in, but [she] did feel a little pressure" and the nurse's testimony that Jade told her that Gonzalez said that it was "not in." However, the jury is free to believe some and disregard other testimony of a witness. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (explaining that "the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of their testimony"). Additionally, there was testimony that called into doubt the truthfulness of

9

Gonzalez's statements to Jade during the incident. Specifically, Jade told her school counselor that even though Gonzalez kept telling her that what was happening was not sex, she knew that it was. The jury could have reasonably not believed Gonzalez's statement, "it's not in."

Although Jade may have described it differently, the jury could have reasonably determined that Jade was describing penetration of her anus by Gonzalez's penis. Jade testified that Gonzalez "tried to stick [his penis] in [her] butt." The SANE report stated that "butt," was Jade's word for "anus." Jade told the nurse that Gonzalez touched her with his penis in the circled area, and that although he told her that it was "not in," she could feel a pressure that caused pain. *See Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd) (explaining "the jury could properly conclude from common knowledge what part of the behind would hurt when 'touched' with a penis, and what force is required"). Further, Jade circled the area on the diagram where she felt that painful pressure, and the diagram was shown to the jury. Based on all the evidence, the jury could have reasonably determined that when Gonzalez pressed his penis against Jade's anus with enough force to cause her pain, that he did in fact penetrate her anus, even if she did not describe it as penetration. *See id.* (concluding evidence was sufficient to establish penetration of child's anus when child testified that "the defendant touched her behind with his penis and that it hurt"); *cf. Vernon*, 841 S.W.2d at 409 (concluding that evidence was sufficient to support jury's finding that defendant penetrated child victim's female sexual organ when child described painful pressure caused by defendant touching the "outside" of her "vaginal area" and responded "no" when asked if defendant touched "inside").

In support of his sufficiency challenge regarding the penetration of a child's sexual organ, Gonzalez contends that the only evidence of penetration presented at trial was the forensic nurse's testimony that Jade told her, "He put his private in my private," which he

contends is too vague a statement to support either offense. However, in addition to Nurse Hill's testimony that Jade told her that Gonzalez "put his private in [her] private," the SANE report was also admitted into evidence and stated that Jade called her female genitalia her "private." Additionally, as noted above, the school counselor testified that Jade told her that "[she] knew it was sex." The jury could have reasonably determined that Jade was describing the penetration of her sexual organ by Gonzalez's penis. *See Ochoa v. State*, 955 S.W.2d 389, 392 (Tex. App.— San Antonio 1997) (concluding that evidence was sufficient to support that defendant penetrated child victim's sexual organ when she testified that defendant put his "private" in her "private"), *aff'd*, 982 S.W.2d 904 (Tex. Crim. App. 1998).

For the reasons detailed above, we conclude that the evidence was sufficient to support Gonzalez's two convictions that he challenges based on the sufficiency of the evidence. We overrule his first issue.

## JURY INSTRUCTION

In his second issue on appeal, Gonzalez contends that the trial court erred when it did not include a definition for "penetration" in the jury charge.

The trial court is required to give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Tex. Code Crim. Proc. art. 36.14. Jury-charge-error claims are reviewed under a two-pronged test in which the appellate court must determine: (1) whether the charge was erroneous, and (2) if there was an error, whether the error was

11

harmful to the defendant. *Olivas v. State*, 202 S.W.3d 137, 143–44 (Tex. Crim. App. 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

Here, the court's charge instructed the jury that "'[p]enetration' is complete however slight." Gonzalez characterizes this instruction as "legally inadequate" and contends that the Texas Court of Criminal Appeals established a legal definition for "penetration" in *Vernon* that the trial court should have included. *See Vernon*, 841 S.W.2d at 409. However, the Texas Court of Criminal Appeals has held that defining "penetration" consistent with the sufficiency analysis language in *Vernon* in a court's aggravated sexual assault charge was error. *See Green v. State*, 476 S.W.3d 440, 446 (Tex. Crim. App. 2015). Thus, we conclude that the trial court did not err when it did not include a definition for "penetration." Because we have concluded there is no trial-court error, we do not analyze harm in this case. *See* Tex. R. App. P. 47.1. We overrule Gonzalez's second issue.

### *MIRANDA* WARNINGS

In his final issue on appeal, Gonzalez contends that the trial court erred when it admitted the video recording of his interview with Detective Groff because he was not given *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The State contends that this issue is not preserved for appellate review. We agree.

To preserve a claim for appellate review, there must generally be a timely, specific objection that comports with the complaint on appeal as well as an adverse ruling from the trial court. *See* Tex. R. App. P. 33.1(a); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). This applies to complaints of *Miranda* violations. *Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974) ("[I]n order to complain about the admissibility of a

confession, even in regard to a violation of *Miranda*, and other federally guaranteed constitutional rights, there must be an objection in the trial court.").

Here, when the State offered the video into evidence, Gonzalez objected to its relevance. No objection was made based on the lack of *Miranda* warnings. The objection made at trial does not comport with the issue raised on appeal. *See Clark*, 365 S.W.3d at 339 (explaining that complaint on appeal must comport with objection at trial). Gonzalez did not preserve his *Miranda* issue for review. Because this complaint was not preserved for appellate review, we do not reach the merits of this issue. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (explaining that if issue has not been preserved for appeal, court of appeals should not address merits of that issue).

## CONCLUSION

We affirm the trial court's judgments of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed:   May 21, 2026

Do Not Publish